DEFFENBAUGH *v.* JACKSON PAPER MANUFACTURING CO.

1. PRINCIPAL AND AGENT—AUTHORITY OF SUPERINTENDENT—CONTRACT OF EMPLOYMENT—COMPENSATION FROM PROFITS.
    The superintendent of a manufacturing company is not, by virtue of his authority as a general agent, empowered to contract with an employé for an interest in the principal's business or its profits.

2. SAME—RATIFICATION—EVIDENCE.
    Where the superintendent of a manufacturing company makes an unauthorized contract to compensate an employé with an interest in the profits of the business in addition to a specified salary, the fact that the books of account, kept under the superintendent's direction, show payments to the employé in excess of his salary, has no tendency to show a ratification by the company, in the absence of evidence that it was brought home to the company that the excess was paid as commissions

Error to Jackson; Chester, J., presiding. Submitted January 27, 1899. Decided May 23, 1899.

*Assumpsit* by George B. Deffenbaugh against the Jackson Paper Manufacturing Company on a contract of employment. From a judgment for plaintiff, defendant brings error. Reversed.

Plaintiff sued defendant upon a contract of employment, set forth in the declaration as follows: That he was employed as the mechanical superintendent of the defendant's works, in consideration of the yearly salary of $1,200, and the further consideration of 10 per cent. of the yearly net profits of defendant's business in excess of $5,000. The employment was alleged to be for one year from February 1, 1895. The net profits are claimed to be $9,758.32. Plaintiff recovered verdict and judgment for $582.30.

In the latter part of December, 1894, one Charles A.

Jackson entered into negotiations with the managing director of the defendant for employment as superintendent. Jackson and plaintiff had been employed in a similar mill together in Monroe for some years. At the request of Jackson, plaintiff came to the city of Jackson, and looked over the works and books with him. Plaintiff's agreement was made through Mr. Jackson. Plaintiff made two trips to Jackson, and claims that the final arrangement was made about the very last of December or first of January, but the precise date is not given. Plaintiff had no talk with any officer of the company about his employment, and had no letter or other writing to show his contract. In his testimony he stated the contract to be that he was to have $1,200 a year, and was "to receive 25 per cent. of 40 per cent. of all profits over and above $5,000." The contract was to commence the 1st of the February following. Mr. Jackson was at the same time negotiating employment for himself, and desired to secure the services of his brother, Gale Jackson, and the plaintiff. In this he was successful, and his brother was employed as bookkeeper. Mr. Potter, the general agent of the company, conducted the negotiations with Charles Jackson. Mr. Jackson was not then in the employ of the company, and there is nothing to indicate that he had then received any authority to make contracts of employment, or to act for it in any way. Charles Jackson undoubtedly agreed with them for a division of the 40 per cent. profits he was to receive. Jackson continued to work for the company for about a year, and suddenly disappeared, leaving his account overdrawn $1,100. His whereabouts were for some time unknown. The defendant tried to find him, but learned nothing till news of his death in New Orleans was received.

The annual meeting of the company was held on January 18, 1895. The record shows the following:

"Mr. Potter reported that he had arranged with Charles Jackson, subject to the approval of the board, to take the superintendency of the mill, at a salary of $1,500. He

was to associate with him Gale Jackson, at $700 per annum, and George Deffenbaugh, as the master mechanic, at $1,200 per annum; Mr. Charles Jackson to have a further compensation of 40 per cent. of the net profits of the year in excess of $5,000. In pursuance of the above, Mr. Charles Jackson was appointed superintendent from February 1, 1895, to be continued so long as his services were satisfactory to the board."

This is the only written evidence of the arrangement.

Defendant, at the conclusion of the evidence, requested the court to direct a verdict for it. This was refused, and the case submitted to the jury upon the theory of an original contract as alleged, and the jury rendered a verdict as stated.

*Pringle & Hewett*, for appellant.

*Blair, Smith & Townsend*, for appellee.

Grant, C. J. (*after stating the facts*). 1. Plaintiff relies upon the authority of Mr. Charles Jackson, as the agent of defendant, to make the contract declared upon. If Jackson possessed the power to make it, it is by virtue of his authority as a general agent, or special authority conferred upon him by the proper officers of the company. The contract was not within the scope of a general agent to make. Such an agent is not clothed, by virtue of his agency, with power to contract with an employé for an interest in his principal's business, or an interest in the profits thereof. See *Gore v. Assurance Co.*, 119 Mich. 136.

2. No special authority was shown. Plaintiff dealt with Jackson alone. He did so at his own risk. He cannot plead ignorance of the law. It was his duty to inquire into the scope of Jackson's agency. If he chose to trust implicitly to his particular friend, Jackson, the defendant is not responsible or liable for it. Only when the contract had been reported by Jackson to the company, and approved and ratified by its proper officers, could it be made liable. Potter, the managing director, concluded the ne-

gotiations so far as lay in his power.   He testified that he made the arrangements with Jackson for $1,500, and 40 per cent. of the profits above $5,000, and that Jackson should bring plaintiff, at a salary of $1,200 a year, and his brother, at $700 a year, subject to the approval of the directors.   His testimony stands undisputed.   The records of the directors' meeting, made shortly after, confirm it. There is no competent evidence of any other contract.

3. There is no tangible evidence to show ratification. The alleged contract was never brought to the attention of the directors, nor was it brought to the attention of any officer of the company until very nearly the close of the year, and probably not until afterwards.   The books of account were kept by Gale Jackson, under the direction of his brother Charles. There is no evidence that any other officer or employé directed the keeping of the accounts. Plaintiff received money from the defendant in excess of his salary to the amount of $258.   This was charged against him in his account.   This did not tend to show any knowledge on the part of any officer of the company of this alleged agreement.   It is no uncommon thing for such employés to receive money in advance of their salaries.   No officer of the company was informed that this was for commission.   Furthermore, the thing having been done under the direction of Charles Jackson, and he, his brother, and plaintiff being interested, by their own private agreement, in this 40 per cent. of the profits, there would seem to be no justice or propriety in holding that these charges were evidence of ratification, or formed any basis for the application of the doctrine of estoppel.

It is also urged that, in several interviews between plaintiff and Mr. Potter, Potter made no disclaimer of liability for this commission.   These interviews were had more than a year after the alleged contract was made, and after the year for which suit is brought had expired. This cannot be held evidence of a ratification of the contract.   Mr. Potter had no authority to make a contract with the plaintiff or with Jackson for a portion of the

profits. If he had no authority to make it, he certainly would have no authority to bind the company by failure to deny it, or even by admitting it. The only contract made by defendant with plaintiff was the one reported by Mr. Potter to the board of directors, and ratified by it. There is no tangible evidence that any other was made, contemplated, or ratified.

Plaintiff may have honestly understood that the defendant agreed to pay him his share of this commission, but there is nothing to show that defendant so understood it, or had any reason for so doing. It is very evident that Jackson, his brother, and plaintiff had a private agreement in regard to this commission, and the division of it among themselves. Gale Jackson was a party to it. He was plaintiff's witness, and he testified: "My arrangement was a private arrangement between my brother and myself. I understood Deffenbaugh's to be the same. I never made any contract with any one else but my brother Charles." Gale Jackson's account was also over-drawn. Would this overpayment be evidence of knowledge that Gale was to receive a commission, and bind the company to pay it?

Judgment reversed, and new trial ordered.

The other Justices concurred.