[L. A. No. 8457. In Bank.—September 17, 1926.]

## D. A. HOWARD, Appellant, v. THE WINTON COMPANY (a Corporation), Respondent.

[1] AGENCY — AUTHORITY OF GENERAL MANAGER — CONTRACT TO SHARE PROFITS WITH EMPLOYEE.—The general manager of a business has no authority, in the absence of express and particular instructions, to contract to distribute to an employee, as part of his compensation for services, a share of the net profits of the business.

[2] ID. — DUTY TO INQUIRE AS TO AUTHORITY. — Persons entering into contracts for a portion of the profits of a business should, for their own protection, make inquiry as to the actual authority of a general manager or agent with whom they are contracting in this respect, and in the absence of such inquiry or of an estoppel or of ratification the principal should not be bound by the provisions of such contract.

---

(1) 2 C. J., p. 645, n. 3 New, p. 660, n. 89 New. (2) 2 C. J., p. 562, n. 81.

APPEAL from a judgment of the Superior Court of Los Angeles County.  William C. Doran, Judge.  Affirmed.

The facts are stated in the opinion of the court.

Howard L. Grace for Appellant.

Gibson, Dunn & Crutcher for Respondent.

THE COURT.—Plaintiff instituted this action to recover $4,637.83 asserted to be owing to him for services rendered the defendant company as sales manager of its Los Angeles branch.  Briefly, the complaint set forth that this sum was due under the terms of a written contract, dated October 20, 1919, alleged to have been executed by the parties to the action.  The contract, a copy of which is incorporated in the complaint, specifies that the plaintiff is to receive, while serving as sales manager of defendant's Los Angeles branch, $175 a month, and in addition thereto one per cent on all retail sales made by him and ten per cent of the net profits of said Los Angeles branch.  It is alleged in the complaint that the net profits of said branch of the defendant company for the fiscal year ending October 31, 1920, during which time the plaintiff served as its sales manager, were $46,378.35.

At this point it may be well to state that the plaintiff received, while in the employ of the Los Angeles branch of the defendant company, a monthly check for $175 from the home office of the defendant company.  He has made no attempt to recover one per cent commission on any retail sales made by him personally.  At no time during the conduct of this action has he made demand for any compensation other than the ten per cent of the net profits of the Los Angeles branch.

The copy of the contract appearing in the body of the complaint shows that it was not signed in the name of the defendant company nor by any of its executive officers.  It was, however, signed by one H. L. Owesney and by the plaintiff.  The record points to said H. L. Owesney as manager of the Los Angeles branch of the defendant company.

In its answer the defendant company specifically denied the execution of said written contract, or of any contract,

with the plaintiff, and further denied that its net profits from the Los Angeles branch exceeded $16,249.87 during 1919–20. The cause was tried before the court, without a jury, and it was found that the written contract sued upon was executed between plaintiff and H. L. Owesney, manager of the Los Angeles branch of the defendant company; that the alleged contract was never reported to the defendant company by either plaintiff or Owesney; that Owesney was without authority, actual or implied, to execute such contract in the name of the defendant; that the profits of the Los Angeles branch of defendant company for the fiscal year 1919–20 did not exceed $16,000; and that defendant had no notice, knowledge or reason to believe that the plaintiff had been promised any portion of its profits. The trial court accordingly entered judgment for the defendant company, from which the plaintiff appeals.

It is contended by the appellant that "Owesney, general manager of the Los Angeles branch and general agent clothed with authority to hire, fire and fix the compensation of employees, had authority to make the contract in suit." Hereunder it is pointed out that said Owesney, in his capacity as general manager, had employed and discharged all employees of the Los Angeles branch and had determined, without the assistance of the home office, the compensation to be paid such employees. It is then urged by the appellant that "if the principal had any objection to measuring the amount of an employee's compensation by a fixed or definite proportion of the profits of the business of the branch, would he [it] not have placed such a restriction or limitation in the authority to his [its] agent?"

The respondent, on the other hand, contends that the general manager of its Los Angeles branch had neither actual nor implied authority to make a contract disposing of any part of the profits or property of his principal. It is argued that "The implied authority of a general manager to fix the compensation of employees in reasonable amounts cannot be stretched into an authority to give away the property of the principal, and that is precisely what Owesney undertook to do. After all the expenses of the business, including the compensation paid employees, had been deducted, the remaining net profits were the property of the employer."

The finding of the trial court that the alleged contract was never reported to the defendant company by either appellant or said Owesney would seem to be supported by the record. Furthermore, there is nothing in the record to indicate that the defendant company had ever given the general manager of its Los Angeles branch express authority to make a contract with any employee whereby such employee would receive a share of the profits of said branch. On the other hand, the plaintiff stated upon the taking of his deposition in advance of the trial that he "did not make any inquiry as to whether or not he [Owesney] had authority to make such contract. I took it for granted that he had full authority."

[1] The case, therefore, reduces itself to a single proposition, namely, whether the general manager of a business may, in the absence of express and particular instructions, contract to distribute to an employee a share of the net profits of said business; or, in other words, is the general manager of a business clothed with implied authority to contract away the profits of the business?

Neither the research of counsel nor our own efforts have brought to light a California case passing upon the identical point here presented. The authorities are ample to the effect that a general manager has implied authority, within reasonable limits, to employ, discharge and determine the compensation of employees. In addition, there are declarations, hereinafter quoted, to the effect that the execution of a contract disposing of a portion of the profits of a business is unreasonable and not within the implied authority of the general manager of such business.

In 1 Mechem on Agency, pages 711, 712, it is stated that "A general manager, put in complete charge of a business in which servants, and the like, are ordinarily employed, would have implied authority, within the range of what is reasonable and proper, to employ the necessary help. In doing so, he may make contracts of a usual and reasonable sort, such as, for example, the hiring of an employee for a year; or the assumption of the risk of the employee's competency to fill the position. He would not, on the other hand, have any implied authority to contract to give the employee, as part of his compensation, an interest in the principal's business or its profits."

*Deffenbaugh* v. *Jackson Paper Mfg. Co.,* 120 Mich. 242 [79 N. W. 197], is cited by the respondent as authority for the proposition that the execution of a contract such as is here involved does not fall within the implied authority of a general manager. The court in that case declared: "If Jackson possessed the power to make it, it is by virtue of his authority as a general agent, or special authority conferred upon him by the proper officers of the company. The contract was not within the scope of a general agent to make. Such an agent is not clothed, by virtue of his agency, with power to contract with an employee for an interest in his principal's business, or an interest in the profits thereof."

At first blush *Deffenbaugh* v. *Jackson Paper Mfg. Co., supra,* would seem to be on all fours with the instant case. The two cases are distinguishable, however, in a respect not recognized by counsel for either side. In the report of the Deffenbaugh case there appears in the statement of facts which precedes the opinion of the court the following: "Mr. Jackson [the asserted superintendent] was not then in the employ of the company, and there is nothing to indicate that he had then received any authority to make contracts of employment, or to act for it in any way." In explanation of this sentence it may be said that in that case "Mr. Jackson" was negotiating with the defendant therein to become its superintendent, and apparently during the conduct of these negotiations he, being anxious to be assisted by the plaintiff, executed the contract sued on by the plaintiff in which he employed the plaintiff as mechanical superintendent at a fixed salary per month and ten per cent of the net profits in excess of $5,000. In other words, the contract sued on by the plaintiff in that case was apparently executed by a person who was not at the time the superintendent of the defendant company. Whether the last-quoted declaration is a correct statement of an actual fact in that case is open to speculation, inasmuch as it does not appear in the opinion. If, however, it be a true statement, then the supposed superintendent (Mr. Jackson) would not have had authority to do *any* act on behalf of the defendant therein, and clearly, under these circumstances, he could not contract away a share of its profits. This is mentioned because the court in its holding in that case did not advert to this circumstance but decided the case apparently upon

the assumption that "Mr. Jackson" was, in fact, superintendent of the defendant company at the time he executed the contract with the plaintiff. If "Mr. Jackson" was not the superintendent of the defendant company at the time of the execution of the contract with the plaintiff the holding of the court in that case, upon the question presented in the instant case, would have no greater force than that of *dictum.*

We are in accord with the rule enunciated in Mechem on Agency, *supra,* and *Deffenbaugh* v. *Jackson Paper Mfg. Co., supra,* and this whether or not its declaration in the latter was *dictum.* The rule that a general manager or superintendent may not, in the absence of express authority, contract to distribute to employees a portion of the profits of a business would appear to be dictated by sound business considerations. Were the rule otherwise, and should it be held that such power fell within the implied authority of a general manager or agent, it might be carried to unreasonable limits. [2] And persons entering into contracts for a portion of the profits of a business should, for their own protection, make inquiry as to the actual authority of a general manager or agent in this respect. In the absence of such inquiry or of an estoppel or ratification the principal should not be bound by the provisions of such a contract.

As already indicated, the defendant in the instant case had no knowledge of the existence of the asserted contract. Moreover, there is an absence of facts which might give rise to an estoppel or a ratification of such a contract. The foregoing matters, considered with the plaintiff's admission that he had not made inquiry as to the scope of Owesney's authority, would seem to warrant the finding of the trial court that the execution of the contract sued upon was not within the actual or implied authority of said general manager.

We find nothing in the California cases cited by appellant inconsistent with the views herein expressed. Those cases merely recognize the right of a company to compensate any of its employees by granting or distributing to them a share of the profits of the business. None of those cases, however, involved the question here presented, namely, whether a general manager or agent has implied authority to execute

a contract with an employee by which the latter will share in the profits of the business.

For the reasons herein advanced the judgment appealed from is affirmed.