**Harry A. Sacks, Appellee, v. Helene Curtis Industries, Inc., Appellant.**

**Gen. No. 44,604.**

Opinion filed March 8, 1950.
Released for publication April 3, 1950.

ADOLPH A. RUBINSON, of Chicago, for appellant; POP-
PENHUSEN, JOHNSTON, THOMPSON & RAYMOND, of Chi-
cago, of counsel.

GROSSMAN & GROSSMAN, of Chicago, for appellee;
LOUIS N. GROSSMAN and LESTER N. GROSSMAN, both of
Chicago, of counsel.

MR. JUSTICE BURKE delivered the opinion of the court.

Harry A. Sacks filed a complaint in the circuit court
of Cook county against Helene Curtis Industries, Inc.,
an Illinois corporation, charging that on or about Janu-
ary 2, 1937, the defendant offered him, a salesman in its
employ, the position of sales manager and educational
director; that he accepted the offer, assumed the posi-
tion and responsibilities of the office, proceeded to
perform the work and duties thereof; that contempora-
neously with the offer the defendant agreed to pay and
he agreed to accept for such services, in addition to his
salary, a commission of 1 per cent of the amount by
which defendant's annual sales would exceed the
volume of its sales for the year 1936; that defendant
from time to time made payments on account of the
commissions due; that under the agreement he earned
commissions totaling $190,483.96; and that he received
on account thereof the sum of $6,500 in cash and $18,-
928.80 in merchandise. He asked judgment for the
balance of $165,055.16. Defendant in its answer denied
that such a contract was made, denied that plaintiff was
at any time sales manager and educational director,
alleged that at no time was he given any executive re-
sponsibilities, denied making payments on account of

79

any commissions due him, asserted that the action is barred by the statute of limitations, and that as the alleged agreement runs for a period beyond one year it is barred by the statute of frauds and perjuries. A trial before the court and a jury resulted in a verdict against defendant for $75,000. Motions by defendant for a directed verdict, for judgment notwithstanding the verdict and for a new trial were overruled, and judgment was entered on the verdict. Defendant appeals.

Plaintiff's theory is that an oral contract was entered into between him and the defendant, acting through Louis P. Stein, its president and general manager, early in January 1937, whereby the defendant employed him as its sales manager and educational director, and agreed to pay him as additional compensation for his services in those capacities a commission of 1 per cent on the volume by which its sales were increased over those for the year 1936; that the contract was to continue from year to year or until such time as it was agreed by the parties to make a change; that plaintiff assumed and discharged his duties under the contract and fully performed all that was required of him; that the defendant from time to time made payments on account of the commissions due under the contract; that the payments tolled the statute of limitations, and that the contract having been fully performed on the part of plaintiff, the statute of frauds cannot be availed of as a defense. Defendant's theory is that the conversation alleged in the complaint and to which plaintiff testified did not occur; that the president of defendant at no time agreed that defendant would pay to plaintiff a commission on the amount by which the sales of 1937 and subsequent years exceeded the sales of 1936; that the president of defendant had no authority to make the alleged agreement on behalf of defendant; that the alleged agreement was kept

80

secret and was not adopted or ratified by defendant; that the alleged agreement was not one to be performed within one year, was not signed on behalf of defendant and was unenforceable by virtue of section 1 of the statute of frauds; that all claims under the alleged agreement for the years 1937, 1938 and 1939 are barred by section 15 of the statute of limitations; that no act of defendant removed the bar of the statute of frauds or tolled the statute of limitations; that the alleged agreement is so uncertain in its terms as to be unenforceable; and that neither the facts alleged in the complaint nor the evidence will support the judgment.

Defendant is engaged in the business of manufacturing beauty equipment and supplies and selling them to beauty shops. Louis P. Stein and Gerald Gidwitz started the business in 1927. Stein had charge of the selling end of the business and Gidwitz of the manufacturing division. Defendant was incorporated under the laws of Illinois in 1929 and after 1934 the stock was owned equally by Louis P. Stein, Gerald Gidwitz and Willard Gidwitz, who constituted the board of directors. Stein was president, Willard Gidwitz vice-president and Gerald Gidwitz secretary and treasurer continuously through the period involved. In 1934, Willard Gidwitz was placed in charge of a New York agency then opened. Later this agency was incorporated as Helene Curtis Sales. Willard Gidwitz continued as the head of the New York office until 1942, when he returned to Chicago to devote his attention to war production. Stein continued as the over-all director of sales and was in addition active sales manager of the Chicago division through 1942. Gerald Gidwitz was in general charge of all company affairs except sales and particularly had charge of all financial matters.

Plaintiff was employed by defendant as a salesman in 1930. He testified that after 1930 all salesmen in the

beauty supply division were paid on a salary basis and that no salesmen in this division were paid a commission on sales. There is no evidence that plaintiff was paid anything other than his weekly salary and traveling expenses prior to 1938. In 1935 and 1936 he was paid a salary and was allowed his traveling expenses each week. In 1937, he received a salary of $100 a week and his traveling expenses. In the latter part of 1940 his salary was increased to $125 a week. He was paid this salary by check. He received separate checks for his traveling expenses. Plaintiff testified that at the beginning of 1937, Stein asked him to come into his private office in the offices of defendant at Chicago and said that he had some good news for him. The following is plaintiff's testimony as to the conversation:

"When I got into his office he shook my hand and said, 'I want to be the first to congratulate you.' I asked him what the occasion was and he said, 'Harry, you are now sales manager and technical director of the company. How does that make you feel?' I said 'Thanks, Mr. Stein, that makes me feel fine, but it is not any glory or titles that I am after.' He said, 'Harry, you are an executive now, you must learn to be patient. Sit down and relax. I will tell you the details.' So we sat down and then he said, 'First, I want to tell you, Harry, that I want you to always know that I am your friend and during these months that you have been complaining that you had to make more money, it was a serious matter with me. I would have liked to have taken care of it sooner but I just could not. However, I finally got the boys together and they agreed with me that we should do something for you. They, like myself, are very pleased with the work you have been doing. They made those expressions, and so we worked out a plan we feel will be good for both you and the company. Here is the set-up: So far as your weekly drawings are concerned, they will remain the same.

82

That will be strictly a salary. So far as your expenses are concerned, we will pay your expenses while you are on the road just as we have done before. However, because of the nature of your new position and with your added responsibilities, we expect that your traveling expenses will be a lot higher than they have been heretofore. So far as your increased earnings are concerned that would have to come out of increased business.' He said, 'Our plan that we are offering to you, —and I urge you to accept it, Harry, is a good one, it is a great opportunity for you,—is that we will pay you 1% overriding sum on all increased business. For example, if the company increases its business by $100,-000 a year under your sales managership, that will mean $1,000 in overriding commission to you for the year, which at an average would be an extra $20 a week.' He said, 'However, at the rate we are growing, to talk in terms of $100,000 a year increase is silly.' He said, 'I cannot see where our increase should be under a minimum of a quarter million dollars a year. That would mean an overriding commission to you of $2,500 or an average extra earning of $50 a week over and above your salary. If it is one half million, your overriding commission would be $5,000 or an average earning of $100 a week over your salary.' He said, 'Harry, there is no limit to how much money you can earn. It is all up to you. You have expressed a lot of ideas as to what you would like to do. We have experimented with your ideas. We are satisfied you know the business and I think this is going to be the making of you.' I thought it over for a little bit and then I asked Mr. Stein if he meant the gross business and he said, 'No, Harry, that would not be right. We could not pay any commissions on return merchandise or bad accounts,' and I agreed with him that it was only fair to hold it to the net business. Then I asked him how long this arrangement was to run. He said, 'From year to year

or until such time as we agree to make any change.' I thought it over for a while and then I said, 'Mr. Stein, it is perfectly satisfactory to me. You can draw up a contract exactly as you have outlined it.' Mr. Stein said, 'Harry, nobody in this company has any written contract, not even I and I am president and general manager of the company. I am your friend and as long as you are associated with me you do not have to worry about any written contract.' So again I thought it over and I said, 'Mr. Stein, it is a deal,' and we shook hands on it. Then Mr. Stein patted me on the back and said, 'Good luck to you, Harry. I know you will do a good job.' "

On his examination before trial plaintiff testified that the above conversation occurred on January 2, 1937. Mr. Stein testified that no such conversation took place on January 2, 1937, or at any other time, that there was never any discussion with plaintiff with respect to paying him a commission on the sales of defendant, and that the agreement which plaintiff alleged and to which he testified, was never made. There was testimony that plaintiff was in North Carolina and thereabout and that Stein was in Texas and thereabout in the first half of January 1937. Plaintiff voluntarily left the employ of defendant on October 14, 1944. He claims that at that time his compensation under his agreement with defendant was about $45,000 a year. Plaintiff admits that he never wrote or received a letter in which his claim that defendant owed him commissions on sales was mentioned, and he does not state that he mentioned his alleged agreement with defendant and its indebtedness to him for commissions to any of the many persons with whom he discussed his relations with defendant during the eight years involved.

Defendant maintains that there is a complete absence of proof of authority of Louis P. Stein to bind it to the contract on which plaintiff bases his action, that plain-

tiff has the burden of proving Stein's authority to bind it to the particular contract, and that the law will not permit enforcement of a contract against a corporation which is not disclosed to the corporation. Plaintiff asserts that the authorized acts of a president or other officer of a corporation, when urged as a defense, must be affirmatively pleaded and proved, and that the question of want of authority on the part of Louis P. Stein, president and general manager of defendant, to bind it by the contract entered into on its behalf by him with the plaintiff, was not raised by the pleadings and cannot be urged. Plaintiff states that in dealing with the president and general manager of defendant he was not required to inquire as to whether there were any limitations on the latter's authority by way of by-laws of the corporation or special resolutions of its board of directors; that even if the by-laws or special resolutions limited the authority of the president and general manager, such limitation would not be binding upon plaintiff unless he had notice or knowledge thereof; that the defendant, having had the benefit of the contract of employment entered into by its president in its behalf, cannot now assert lack of authority of the president to negotiate the contract; that the general rule of law is that the president of a corporation, by virtue of his office, is the business head of the corporation, and in the absence of affirmative proof to the contrary, is presumed to have been authorized by the corporation to contract or to act otherwise on behalf of the corporation with reference to any matter pertaining to ordinary corporate affairs within the general powers of the corporation; that the contract between plaintiff and defendant, by its president and general manager, was not one which required defendant to pay a percentage of its profits; and that the agreement entered into between plaintiff and defendant through Mr. Stein was neither secret nor unusual and extraordinary.

85

We turn to a consideration of plaintiff's contention that defendant is not in a position to urge as a defense any want of authority on the part of Louis P. Stein because that is an affirmative defense which defendant did not plead, citing subparagraph 4 of sec. 43 of the Civil Practice Act [Ill. Rev. Stat. ch. 110, par. 167, subpar. (4); Jones Ill. Stats. Ann. 104.043, subpar. (4)]. We cannot agree with plaintiff. It is well settled that one dealing with an agent of a corporation has the burden of proving the agent's authority to bind the principal to the particular contract on which he rests his claim. Plaintiff averred that a certain contract was entered into with defendant and the latter denied that allegation. This presented an issue as to the existence of the contract and as to whether the alleged contract was made with an agent of defendant having authority to bind defendant. The lack of authority to make the alleged contract was not an affirmative defense. Furthermore, sec. 42 of the Civil Practice Act [Ill. Rev. Stat. ch. 110, par. 166; Jones Ill. Stats. Ann. 104.042] provides that "all defects in pleadings, either in form or substance, not objected to in the trial court shall be deemed to be waived." The failure of plaintiff to prove the authority of the president of defendant to bind it secretly to the contract asserted by him was repeatedly urged on the trial and the plaintiff at no time suggested that this was not a defense which could be made under the answer.

It is well settled that a president of a corporation has no implied authority to make a contract on its behalf which is unusual and extraordinary. See *Central Republic Trust Co. v. Evans,* 378 Ill. 58; *Washburn v. Hoxide Institute,* 249 Ill. App. 194; *Brown v. Fire Ins. Co. of Chicago,* 274 Ill. App. 414, 419; *Abraham Lincoln Life Ins. Co. v. Hopwood,* 81 F. (2d) 284, 286; Fletcher Cyc. Corp. (Perm. Ed.) §671. It is universally held that a contract to pay as compensation

86

a percentage of the profits of a corporation is not the usual and ordinary contract which one authorized to employ on behalf of the corporation may make without specific authority of the corporation. *Warszawa v. White Eagle Brewing Co.,* 299 Ill. App. 509, 517; *Howard v. Winton Co.,* 199 Cal. 374, 249 Pac. 511, 512; *Deffenbaugh v. Jackson Paper Mfg. Co.,* 120 Mich. 242, 79 N. W. 197, 198. There is a complete absence of evidence in this case as to the authority of Mr. Stein with respect to the hiring of employees and the fixing of their compensation, except as appears from the testimony of witnesses that he hired salesmen and other subordinate employees in the sales department of which he was the head, and that he fixed their salaries and determined their allowances for expenses. He was not the general manager of the business and affairs of defendant and there is no evidence that he ever made a contract on behalf of defendant which was other than the usual and ordinary contract of hiring on a salary basis. The fact that no other employee or officer of defendant ever had a contract which gave him as compensation a percentage of defendant's gross sales is strong proof that Stein never had and never claimed to have the authority to make such an unusual and extraordinary contract as plaintiff asserts.

██ Plaintiff's assertion that he was not required to inquire as to whether there was a limitation on Stein's authority by way of by-laws or special resolutions of the board of directors, and that even if the by-laws or special resolutions limited his authority, such limitation would not be binding on plaintiff unless he had notice or knowledge of the same, is no answer to defendant's contention that it is never implied that the president of a corporation, merely by virtue of his office, is authorized to make a contract binding on the corporation which is out of the usual and ordinary course of business. The reasoning in a number of

cases, among them *Central Republic Trust Co. v. Evans,* 378 Ill. 58, 65; *Warszawa v. White Eagle Brewing Co.,* 299 Ill. App. 509, 517; and *Washburn v. Hoxide Institute,* 249 Ill. App. 194, 197, shows that the burden of proof is on plaintiff to produce the by-laws of the corporation or some resolution of the board, or other proof of such extraordinary authority. The statement of plaintiff that defendant, having had the benefit of the contract, cannot now assert lack of authority of the president to negotiate it, assumes that there was such an agreement and that plaintiff was rendering services to defendant under it. The uncontradicted evidence is that plaintiff was regularly on defendant's payroll at a salary adjusted from year to year and that he was paid regularly by check as were other employees of defendant. There is no evidence that plaintiff performed any services under the contract for commissions on which he sues except his uncorroborated statement directly contradicted by strong evidence. Where there is admittedly a contract of employment which has been fully performed by both parties, there is no room for the application of the rule that an employer is estopped to deny the existence of a contract of employment where he has accepted the benefit of the employee's services and has not paid for them. See *Bowen v. Trust Co. of New Jersey,* 166 F. (2d) 264.

 Citing *Bloom v. Nathan Vehon Co.,* 341 Ill. 200, 205, plaintiff asserts that the general rule of law is that the president of a corporation, by virtue of his office, is the business head of the corporation, and in the absence of affirmative proof to the contrary, is presumed to have been authorized by the corporation to contract or to act otherwise on behalf of the corporation with reference to any matter pertaining to ordinary corporate affairs within the general powers of the corporation. We agree with defendant that the president of a corporation is its agent and that his

authority by virtue of his office to contract on behalf of the corporation is limited to the usual and ordinary contracts that he would be expected to make in the regular course of business. In the *Warszawa* case, *supra,* the court said (517):

"The president of a corporation is by virtue of his office presumed to have authority to execute such ordinary contracts as are required in the everyday business of the company. *Quigley v. Macqueen & Co.,* 321 Ill. 124; *Bloom v. Vehon Co.,* 341 Ill. 200; *Domestic Bldg. Assoc. v. Pasquale Guadiano,* 195 Ill. 223; *Nagle v. J. L. Hanson Co.,* 262 Ill. App. 160."

The president would not, on the other hand, have any implied authority to contract to give an employee as part of his compensation an interest in the principal's business or its profits. Mechem on Agency (2d) Vol. 1, p. 711, § 988. In the *Warszawa* case the court said further (517):

"If the president of a corporation were authorized to make contracts of this character without action of the directors and without notice to or knowledge of anyone, the directors would not at any time know whether the company was solvent or insolvent or whether it was headed for bankruptcy. The law will not permit the making or enforcement of such contracts."

The *Bloom v. Nathan Vehon Co.* case involved an ordinary agreement to pay a fixed salary of a reasonable amount and not an unusual secret commission superadded to a salary contract.

 Plaintiff states that the contract on which he sues is not unusual and extraordinary. He undertakes to distinguish *Howard v. Winton Co.,* 199 Cal. 374, 249 Pac. 511, and *Deffenbaugh v. Jackson Paper Mfg. Co.,* 120 Mich. 242, 79 N. W. 197, on the ground that the contracts there involved provided for the payment of a percentage of profits rather than a percentage of sales.

Obviously, a contract that provides that a salesman shall get 1 per cent of the sales regardless of whether a profit is realized, places a greater burden on the employer than a contract which provides that the salesman shall get 1 per cent of the nèt profits. In the latter situation the employer is assured of retaining 99 per cent of the profits, whereas in the former the payment of 1 per cent of sales receipts may add to an existing loss and result in insolvency. We are of the opinion that there was a complete absence of proof of authority of Louis P. Stein to bind the defendant to the contract on which plaintiff's action is based, and that it was the duty of the court to instruct the jury to find against the plaintiff.

We also sustain the second point urged by defendant that the law will not permit the enforcement of the contract because it was kept secret and not disclosed to the corporation. The record is barren of evidence from which it could be held that the defendant adopted or ratified the agreement plaintiff alleges. Plaintiff cannot contend that the alleged secret payments by Stein on account of commissions due are an adoption or ratification of the contract by defendant. Stein's lack of authority to bind defendant under the secret contract in the first instance likewise rendered him incompetent to bind defendant by subsequent contracts. Professor Mechem in his work on the Law of Agency, Vol. 1 (2d Ed.) p. 298, § 407, says:

"The knowledge which shall bind the principal may also, of course, be the knowledge possessed by some other agent having a general authority in the matter, and which may be imputed to the principal in accordance with the general rule making notice to an agent notice to his principal. But the knowledge of the particular alleged agent himself of his own unauthorized act cannot thus be imputed to the principal, in such manner as to satisfy the requirement of knowledge by

the principal; for, as to the matter in question, the person acting is not agent until ratification, and it cannot be said that the principal has ratified with knowledge at the time of ratification, simply because the person who thus becomes agent had knowledge.''

Particularly pertinent to the facts at bar is the statement of this court in the *Warszawa* case (517):

"There was nothing in the records of defendant corporation to indicate anything was due and owing to plaintiff, but on the contrary . . . the books of the company would indicate that he was paid in full. If the president of a corporation were authorized to make contracts of this character without action of the directors and without notice to or knowledge of anyone, the directors would not at any time know whether the company was solvent or insolvent or whether it was headed for bankruptcy. The law will not permit the making or enforcement of such contracts.''

There is no proof that defendant had any knowledge of the alleged contract for commissions, or that it by any corporate act recognized the existence of the contract. The acts of the corporation in its dealings with plaintiff were consistent with and are explained by its employment of plaintiff on a fixed salary basis and its payment to him of year-end bonuses in 1940 and thereafter. There is no basis in the record for plaintiff's argument that defendant adopted the alleged contract.

It is unnecessary to extend the opinion by considering the other points. For the reasons stated the judgment of the circuit court of Cook county is reversed and the cause remanded with directions to enter judgment for defendant and against plaintiff.

*Judgment reversed and cause remanded with directions.*

LEWE, P. J., and KILEY, J., concur.