Harry Sacks, Appellee and Cross-Appellant, and Albert J. Horan, Bailiff of Municipal Court of Chicago, for use of Harry A. Sacks, Cross-Appellant, v. American Bonding Company of Baltimore, Appellant and Cross-Appellee.

Gen. No. 44,758.

Opinion filed May 8, 1950. Rehearing denied May 22, 1950. Released for publication May 23, 1950.

TENNEY, SHERMAN, ROGERS & GUTHRIE, and DENT, WEICHELT & HAMPTON, all of Chicago, for appellant; S. ASHLEY GUTHRIE and SAMUEL R. LEWIS, both of Chicago, of counsel.

GROSSMAN & GROSSMAN, of Chicago, for appellee; LOUIS N. GROSSMAN and LESTER N. GROSSMAN, both of Chicago, of counsel.

MR. PRESIDING JUSTICE TUOHY delivered the opinion of the court.

This is an appeal by defendant American Bonding Company of Baltimore and a cross-appeal by plaintiff Harry A. Sacks from a judgment of the circuit court of Cook county in favor of plaintiff and against defendant in the sum of $23,842.72. The action is at law, on two replevin bonds and an appeal bond given in a replevin suit against Sacks in the municipal court of Chicago, for the wrongful suing out of the replevin writ and failure of the plaintiff therein to return the property seized, as directed by the judgment of the municipal court of Chicago.

The plaintiff in the replevin suit was Adeline Ogrodnik and the defendant was the present plaintiff Harry A. Sacks. The goods seized were so-called beauty supplies acquired by Sacks, a dealer, from the National Mineral Company (now Helene Curtis Industries, Inc., and hereinafter referred to by that name) for resale. Ogrodnik claimed title to the goods by virtue of an assignment dated December 8, 1944, from Helene Curtis Industries, Inc. This company in turn claimed title to the goods, asserting that the sale under which Sacks, a former employee, obtained possession was fraudulent and that the company had rescinded the sale. The plaintiff's right to possession was attacked by a motion to strike the pleading in the municipal court, which motion was sustained. An appeal was taken to this court and the judgment of the municipal court was affirmed (*Ogrodnik v. Capron,* 332 Ill. App. 138), the gist of the opinion being that Ogrodnik was not a bona fide assignee and consequently had no right to sue out the replevin writ.

The complaint here sets forth the judgment in the replevin suit, the failure of Ogrodnik to return the property, the two replevin bonds and appeal bond, and alleges that plaintiffs have been damaged in the amount of $38,000 plus interest. Ogrodnik, as an original party to this suit, being later dismissed out, filed an answer, amended answer and counterclaim.

The defenses set up on behalf of the bonding company, partly by adoption of Ogrodnik's pleadings, summarized, are: (1) a denial that plaintiff suffered the damages claimed—even assuming that Sacks had title and right to possession of the goods seized; (2) a denial that Sacks had title or right to possession of the goods replevied; and (3) the defense of recoupment, set forth in the amended counterclaim, alleging that Sacks was indebted to Helene Curtis Industries, Inc., in the amount of $19,168.04 for goods listed as sold and delivered to Sacks and not paid for, and that the claim was assigned by Helene Curtis Industries, Inc., on October 21, 1947, before the suit on the bonds was filed. The assignment, preceded by certain recitals (omitted here for sake of brevity), is as follows:

"Assignment.

In consideration of the foregoing and $1.00 paid by Ogrodnik to Assignor, Assignor confirms the assignment to Ogrodnik dated December 8, 1944, above set forth, and further assigns to Ogrodnik:

1. All and any rights, title and interest of Assignor in said merchandise or any part thereof not heretofore destroyed or disposed of.

2. All claims and causes of action that Assignor has, or except for this assignment would have, against Sacks for any of the following:

(a) For said merchandise or the value thereof or any part thereof;

(b) For the purchase price of said merchandise or any part thereof;

(c) Any and all other claims and causes of action against Sacks, similar or dissimilar to the foregoing, arising out of sale or delivery of merchandise to Sacks during the three-month period including October, November and December, 1944.

Executed under the seal of the Assignor, at Chicago, Illinois, October 21, 1947.

Helene Curtis Industries, Inc.,
By G. Gidwitz,
President.

(Corporate Seal)
Attest:
 Max H. Braun,
 Secretary.
 Max H. Braun,
 Secretary.''

In support of the second defense paragraph two of the answer alleges that title and right to possession at the time of the seizure were in Helene Curtis Industries, Inc., and had passed to Ogrodnik, as assignee, by the assignment of October 21, 1947, after the replevin judgment; that said judgment did not adjudicate title to the goods; and that since Sacks had no title he was not damaged by the failure to return the goods and could not recover their value. The pleadings and judgment in the replevin suit in the municipal court are attached as exhibits.

The bonding company, by its plea set out in the third defense, seeks to offset the alleged debt of Sacks to Ogrodnik, its principal, against Sacks' claim. Written consent of Ogrodnik for such use of the claim appears in the answer. The third defense was stricken on motion.

Defendant contends (1) that the trial court erred in striking from the pleadings the allegations that Sacks had no title to the goods seized in the replevin suit and hence could not recover their value, insisting that the question of Sacks' title or right to possession

was not in issue in the replevin suit, was not adjudicated, and that the replevin judgment is therefore no bar to the assertion *in mitigation of damages* that Sacks had no title or right to possession; (2) that the trial court erred in striking the counterclaim, the assignment being in compliance with the provisions of the statute inasmuch as it alleged that Ogrodnik was the bona fide assignee and that she had acquired title since the replevin suit; and that the motion to strike admitting all facts well pleaded the principal should be allowed to set off the amount which the pleading claimed was owed by Sacks to the assignee; (3) that the trial court erred in permitting the plaintiff to recover damages based upon the resale value of the goods, asserting that the true measure of damages for goods seized and not returned is the price at which similar goods could be purchased in like quantities by plaintiff; (4) that the court erred in allowing damages for alleged wrongful seizure of property not described in the writ of replevin; and (5) that the allowance of $5,800 for Sacks' attorneys' fees was excessive.

Plaintiff by cross-appeal assigns as error the court's ruling which restricted him to a recovery only on the $20,000 appeal bond plus interest. He argues that he should have been permitted to recover $38,000 plus interest, the total of the two replevin bonds plus the appeal bond. He also maintains that the attorneys' fees should have been allowed in the sum of $12,000 and that damages for detention should be allowed at the rate of six per cent instead of at the rate of five per cent.

██ From an examination of the municipal court record in the replevin suit we are in accord with defendant's contention that there was no hearing on the merits of the case there. The decision in that case involved a question of pleading whether plaintiff Ogrodnik was a bona fide assignee of Helene Curtis Indus-

tries, Inc., and was entitled to possession of the chattels then held by Sacks. The trial court, and the Appellate Court here *(Ogrodnik v. Capron, supra)*, held that Ogrodnik was not a bona fide assignee, was not entitled to possession, and consequently had no right to sue. Whether the title to the goods in question belonged to Sacks or to Helene Curtis Industries, Inc., was not decided in that litigation. If Sacks had no title or interest in the goods seized in the replevin suit, he lost nothing because of the failure to return them to him, and the defendant should be permitted to so show in mitigation of damages, notwithstanding the illegal seizure. To allow damages on the theory that the replevin plaintiff was a wrongdoer would be to allow punitive damages, and such damages are not recoverable in this action. *King v. Ramsay,* 13 Ill. 619; *Dalbey v. Campbell,* 26 Ill. App. 502.

██ The judgment is conclusive only as to the issue raised, that is, the issue as to Ogrodnik's right of possession, and does not bar or estop Ogrodnik or the bonding company from asserting in the suit on the bonds that Sacks did not have any title or interest in the goods. The motion to strike the statement of claim in the municipal court was equivalent to a demurrer to a complaint, and was conclusive only as to the points raised by the demurrer. In *Wiggins Ferry Co. v. Ohio & M. Ry. Co.,* 142 U. S. 396, it is said (p. 410) :

" . . . Where the judgment in the former action is upon demurrer to the declaration, the estoppel extends only to the exact point raised by the pleadings or decided, and does not operate as a bar to a second suit for other breaches of the same covenants, although if the judgment be upon pleadings and proofs, the estoppel extends not only to what was decided, but to all that was necessarily involved in the issue. . . ."

In *Warner v. Matthews,* 18 Ill. 83, the replevin defendant pleaded, among other things, a denial of prop-

erty in the plaintiff. The court found for the defendant without specifying on which issue. In a subsequent suit brought by the replevin defendant on the bond the replevin plaintiff filed a plea setting forth the issue of the replevin suit, stating that the ownership of the property had not been inquired into, and alleging that he was the owner. In reversing the decision of the trial court, the court said (pp. 86, 87):

". . . . These decisions are assigned for error. The judgment in the action of replevin necessarily determined that the plaintiff in that action (the defendant in this action) was not entitled to the possession of the property, and that the defendant in that action (the plaintiff in this action) was entitled to a return thereof; and to that extent, and no further, are the rights of the parties concerning the property and the ownership thereof, conclusively adjudged and determined.

". . .

"The general ownership of the property was not, therefore, necessarily determined. . . .

". . .

"The true question is, what has the plaintiff lost, or to what amount is he injured by the failure of the defendant to return the property? and to determine this, it is material to know the extent of his interest in the property."

Furthermore, section 22 of the Replevin Act (Ill. Rev. Stat. 1949, ch. 119, par. 22 [Jones Ill. Stats. Ann. 109.522]), authorizes the plaintiff to show in the replevin suit in mitigation of damages that since the suit began he has become entitled to possession of the property. In interpreting this section, the Supreme Court said in *Farwell v. Hanchett*, 120 Ill. 573, at page 578:

"It thus appears as the intention of the statute, that if, after the commencement of the suit, the plaintiff

becomes entitled to the possession of the property, he may have and retain it, and there shall not be judgment for a return thereof.''

■ The answer, which was stricken, alleges that Ogrodnik acquired title by bona fide assignment on October 21, 1947, after the judgment in the replevin suit and before institution of the suit on the bonds. On a motion to strike, that allegation must be taken as true. In *Chinn v. McCoy for use of Allingham,* 19 Ill. 604, where a plea in the suit on the bond set up defendant's title, in sustaining the plea the court said (pp. 607, 608):

''It will be perceived this plea does not go to the whole action, but to a part only—to the damages. It does not bring up again for determination the right of the defendant, in replevin, to have a return of the property, but the question of damages only.

''The plea is framed under the authority of the act of March 1, 1847, entitled 'An Act concerning practice,' Laws 1847, 62, which is as follows: 'In all actions upon replevin bonds where the merits of the case have not been determined in the trial of the action of replevin in which the bond was given, the defendant may plead the above facts, and also his or her title to the property in dispute on the said action of replevin.'

''This plea, then, is good in form and substance— purports to be to part of the action only, and shows, with legal precision, the facts on which the cause was tried, and why the merits of the case were not determined. . . .''

■ We are of the opinion that the trial court erred in striking paragraph two of Ogrodnik's amended answer, adopted by the bonding company.

The defendant argues that the court erred in striking the amended counterclaim and defense of recoupment based thereon. The amended counterclaim was filed by Ogrodnik to recover from Sacks $19,168.04,

573

being the purchase price listed in the counterclaim for goods sold by Helene Curtis Industries, Inc., to Sacks, for which the latter did not pay. These, in part, are the same goods, according to our view of this evidence, which were seized under the writ and not returned, the part seized comprising something less than half in quantity and value of the goods for which the purchase price is sought to be recovered. Ogrodnik's right to file the amended counterclaim is allegedly derived from the assignment given her on October 21, 1947, two days before this suit was filed. The original counterclaim was stricken because of the failure to properly plead that the assignment was bona fide. The amended counterclaim covers this objection in some detail in the following specific language under oath:

"This defendant [Ogrodnik] is, and has been at all times since October 21, 1947, the actual *bona fide* owner of the chose in action against plaintiff, Harry A. Sacks, for the purchase price of the merchandise above described. This defendant acquired title to said chose in action by the assignment of Helene Curtis Industries, Inc., copy of which is heretofore set forth, which was dated and delivered to this defendant on October 21, 1947. This defendant owns said chose in action in her own right and has the right to retain the proceeds recovered thereon for her own use and benefit, free from claim of the assignor or any other person whomsoever."

The assignment, which is in proper statutory form, clearly sets forth the transfer of all claims of Helene Curtis Industries, Inc., against Sacks.

██ Numerous reasons were assigned by the plaintiff as grounds for striking this counterclaim. The trial court held a former judgment was a bar to this part of the counterclaim. This judgment arose out of a suit filed by Sacks in the circuit court of Cook county (45–C–10690) against Helene Curtis Industries, Inc.,

claiming commissions in the sum of $183,983.96 on a verbal contract made some years before. Against said amount the plaintiff allowed defendant a credit of $18,928.80 for merchandise received. This is the same merchandise as that listed in the counterclaim. There was a verdict and judgment in that case for the plaintiff in the sum of $75,000, and plaintiff contends that, in view of the $18,928.80 credit, said judgment operated as an estoppel against Ogrodnik, as assignee, and the bonding company from claiming the setoff (based on the unpaid purchase price of the goods) against Sacks in the instant case. Whatever merit may have attended the original contention and holding of the trial court is no longer valid in view of the fact that this court has reversed the judgment in the so-called commission case and remanded the cause with directions to enter a verdict for defendant (*Sacks v. Helene Curtis Industries, Inc.*, 340 Ill. App. 76).

■■ We think one further point urged below on the motion to strike is worthy of consideration. Plaintiff questions the good faith of the assignment of October 21, 1947, claiming that it is based upon the same facts that were alleged to support the assignment of December 8, 1944, which this court has held conveyed no interest to the assignee. After the last assignment was executed the deposition of the assignee, Ogrodnik, was taken and considered by the court, together with affidavits by the attorney for the plaintiff herein and counteraffidavits, in an attempt to discredit the assignment. We are of the opinion that these were not properly matters to be considered on a motion to strike. Section 48 of the Civil Practice Act (Ill. Rev. Stat. 1949, ch. 110, par. 172 [Jones Ill. Stats. Ann. 104.048]), refers in considerable detail to the matters which may be considered on a motion to dismiss an action or a suit. Among these matters are "that the plaintiff has not legal capacity to sue." Without determining the

question as to whether or not the challenge made to the plaintiff's capacity here to sue is of such kind and character as intended by this section of the Practice Act, it is to be observed that this section provides in the third paragraph thereof as follows:

" . . . but if disputed questions of fact are involved the court may deny the motion without prejudice and shall so deny it if the action is one at law and the opposite party demands that the issue be submitted to a jury."

At the time the ruling was made on this pleading a jury demand was pending and we are of the opinion that if for no other reason the action of the court in dismissing the counterclaim on affidavits and counteraffidavits was erroneous.

 Nor can it be urged that the counterclaim is barred by the prior judgment of this court. The present assignment was not before this court in the prior litigation, and whether it is based upon the same facts which this court held did not give the assignee any right to the possession of the property in question is a matter to be determined upon a trial of the issues. We therefore conclude that the trial court erred in striking the amended counterclaim and the defense of recoupment based thereon.

Upon a hearing of this cause if the trial court finds that Ogrodnik acquired no such rights under the assignment in question as to entitle her, and through her the defendant here, to set off the claims of the assignor against Sacks, or finds that even though the assignee had that right she has failed to prove such setoffs, the question of damages will again be before the court for consideration. It will be important, in such event, that damages be properly measured, and to that end we shall consider defendant's further assignment of errors.

■ Upon the trial of the cause there were presented to the court two theories of damages. Plaintiff contends that he as a dealer was entitled to the "market value" of the property seized and not returned. This "market value" he defined as the price which the dealer had set for resale to the beauty shops which used the goods. The technical terms used were "jobber's price," the price charged by the manufacturer to dealers, and "shop price," the price at which the dealers sell to beauty shops which used the goods. Defendant contends that the proper measure of damages to be followed was the dealer's price, that is, the price which would be paid by a dealer for similar goods purchased in like quantities. We are of the opinion upon the evidence in this record that the proper measure of damages is as defendant contends. To permit plaintiff to recover on the resale theory would be to allow him a profit on goods which had not been sold, and about which no evidence was introduced tending to show a sale or prospective sale. Under the circumstances, the method of computing damages approved by the trial court was purely speculative, depending upon the plaintiff's unproven ability to procure purchasers who would buy them at market values.

In *Wehle v. Haviland*, 69 N. Y. 448, an action for conversion of plaintiff's stock of goods through attachment, subsequently vacated, the trial court instructed the jury that plaintiff was entitled to recover the retail value of the goods taken, with interest on that amount from the time of seizure. The court of appeals reversed the judgment and held that this measure of damages was erroneous and that the plaintiff was entitled to recover only the cost price of the goods to her, saying (pp. 450, 451):

". . . There is no controversy as to the measure of damages in actions of this character. It is the actual value of the property at the time of the taking with

interest thereon from the time. (*Stevens v. Low*, 2 Hill, 132; *Kennedy v. Strong*, 14 J. R. 128.)

". . . The plaintiff was entitled to recover so much as would repair the injury sustained by the wrong doing of the defendants, and that was the money value of the goods at the time and interest thereon. The money value is the price at which they could be replaced for money in the market, and hence the inquiry is as to the market value of the goods when they have a market value. (*Dana v. Fiedler*, 2 Kern., 41.) The sum at which the plaintiff could have replaced the goods in market would have indemnified her for the loss sustained and the interest upon that sum would have given her the legal profit to which she was entitled, the fixed legal rate of interest taking the place of the uncertain and indefinite profits which the plaintiff might have made either from the possession of the goods or their equivalent in money.

"It is well settled that in actions for the conversion of goods, or for the non-delivery of goods or chattels upon contract, unearned and speculative profits will not be included as a part of the damages to be recovered. . . .

"The retail value, or the price at which the goods are sold at retail, includes the expected and contingent profits, the earning of which involves labor, loss of time and expenses, supposes no damage to or depreciation in the value of the goods, and is dependent upon the contingency of finding purchasers for cash, and not upon credit, within a reasonable time, the sale of the entire stock without the loss by unsalable remnants, and the closing out of a stock of goods as none ever was, or ever will be, closed out, by sales at retail at full prices.

". . . The retail profit was not included in the compensation to which she was entitled."

In *International Harvester Co. of America v. Chicago, M. & St. P. Ry. Co.,* 186 Iowa 86, 172 N. W.

471, which was an action for damages for destruction of goods through defendant's negligence, the plaintiff was a jobber or wholesaler of the goods, and the question was whether the measure of damages was the plaintiff's selling price of the goods or the amount it would have cost to replace them. In holding that the trial court erred in receiving evidence of the selling price and in not measuring the damages by the cost of replacement, the court said (pp. 478–480):

"It may not be doubted that the basis of all damages rules is a fair compensation to the loser with the least burden to the one who caused the loss. . . . When a stock of merchandise is involved, the measure of damages is the cost of such stock in like quantity at the place of the alleged trespass, if purchasable there in such quantity. Otherwise it is the wholesale price of such goods on the nearest market where they can be purchased in like quantity with necessary cost of transportation added. . . . The market value of goods to appellee immediately before the injury was what such goods would have cost in the usual market where same could have been purchased, plus the expense or cost incident to shipping them to appellee's place of business. . . .

" . . .

"The exact, ultimate question is whether one who has a stock on hand, who must pay storage and insurance, and must make distribution and sale in a large territory, at the cost of money and time, and which distribution and sale may entail waste and loss, may, if that stock be destroyed, recover as if he had already sold all the stock at list price, without deduction for sales, costs, delivery, depreciation, waste, etc.,—may recover as if he had already received cash for the whole stock at the full list price, without any detraction, and then another had negligently destroyed the cash received. We must answer that he may not."

In *H. Liebes & Co. v. Klengenberg*, 23 F. (2d) 611, (*certiorari* denied 277 U. S. 596), in holding that the measure of damages in a suit against a carrier for failure to deliver the goods was the price at which the goods could be replaced, and not the resale price, the court said (p. 614):

"It is conceded by both parties that the measure of damages for failure to make delivery in cases of this kind is ordinarily the market value of the goods at the time and place of delivery, with interest. . . . 'The market value is the price at which the goods can be replaced for money in the market; not the price for which they are sold at retail.' "

In *J. M. Radford Grocery Co. v. Hothan* (Tex. Civ. App.), 42 S. W. (2d) 119, a suit for conversion of the stock of groceries, the court said (p. 120):

"Upon the trial evidence was admitted over objection as to the retail value of the groceries. The court gave no definition of the term 'cash market value' of the stock of groceries as used in the charge. The value of the stock of goods at which it might be sold at retail is not the proper basis for determining their market value. . . . The retail value involves the element of profits. . . ."

Further complaint is made that the trial court allowed recovery in the amount of $5,112.60 for "assorted spacers" and "replacement rubbers." Assorted spacers and replacement rubbers are accessories made out of metal and rubber. Sacks testified that he had packed these in cartons that had held "solutions" and that they were part of the material that was taken by the replevin plaintiff. He claimed the right to recover their value as included in the category "solutions," referred to in the return on the writ, for which the cartons were originally intended. The action of the trial court in sustaining the plaintiff's contention in this respect was erroneous. The bonding company's

580

liability, if any, in the case is limited to damages arising from wrongful seizure of goods described in the writ. *Danford v. Watkins*, 337 Ill. 222; *Baldwin v. Smith*, 143 Ill. App. 56. The bailiff, in taking, as ''solutions,'' articles or goods that were not solutions, was not acting under authority of the writ and the bonding company is not liable for the goods so taken. In any future computation of damages that may be made, the dealer's price of this item should be deducted.

▉ Finally, complaint is made by both parties of the amount allowed as attorneys' fees. The trial court allowed Sacks $5,800 in the replevin suit. Plaintiff contends that he should be allowed $12,000. Defendant contends that the reasonable value of the services is $1,800. Lawyers were called as experts by both sides to support their claims. It is to be considered that the only attorneys' fees chargeable to the bonding company in this case are for services in connection with the replevin suit. We have carefully viewed the record in this connection and are of the opinion that the amount allowed by the trial court was disproportionately high. Without question the amount allowed was based in part upon the total amount of recovery to which the trial court determined the plaintiff was entitled. Inasmuch as we here hold that the trial court's method of computing damages was erroneous and that upon a retrial the amount, if any, to which the plaintiff is entitled will be substantially reduced, there will undoubtedly be a substantial reduction in the amount found due as attorneys' fees.

▉ We are of the opinion that the trial court committed no error in allowing as damages interest at the rate of five per cent instead of six per cent as contended by cross-appellant.

Because the amount of damages, if any, to be allowed on a retrial of the case will in no event exceed the amount of the appeal bond, it becomes unnecessary to

581

consider the question raised on cross-appeal as to whether the court erred in not permitting a recovery on all three bonds.

For these reasons the judgment is reversed and the cause remanded with directions to the trial court to proceed in a manner not inconsistent with the views herein expressed.

*Reversed and remanded with directions.*

NIEMEYER and FEINBERG, JJ., concur.