THREE SISTERS, INC., Plaintiff-Appellant, *v.* VERTIGO WEST, INC. *et al.,* Defendants-Appellees.

(No. 73-248; █████)

Third District—March 29, 1974.

*Rehearing denied April 24, 1974.*

John F. Sloan, of Peoria, for appellant.

William E. Palmer and Duane Stone, both of Peoria, for appellee.

Mr. JUSTICE STOUDER delivered the opinion of the court:

In this action plaintiff-appellant, Three Sisters, Inc., sought to have a lease forfeiture set aside and in addition sought supplemental relief against other parties. The action was brought primarily against defendant-appellee, Commercial National Bank of Peoria as trustee, the landlord, and Vertigo West, Inc., lessee. The landlord moved for summary

judgment, the complaint was dismissed with prejudice and the plaintiff has appealed.

Since the judgment in this case was entered on a motion for summary judgment, the facts are those contained in the pleadings, affidavits and exhibits attached thereto.

According to the affidavit of William Palmer who was the managing agent in charge of the premises in controversy, he negotiated a lease at the premises between the Catholic Bishop of Peoria, trustee, as lessor and Three Sisters, Inc., as lessee. A written lease was executed on June 15, 1971, for a period of 5 years from that date at a monthly rental of $300. Arthur Nicholson signed such lease as president of Three Sisters, Inc., and additionally Arthur Nichelson and Verdia Nichelson personally guaranteed the obligation of the lessee. The premises were used and occupied by the lessee as a tavern and the required rental payments were made until September 15, 1972. On October 15, 1972, the premises were padlocked by the Internal Revenue Service because of the corporation's Federal income tax delinquency and the premises remained so closed at least until February 16, 1973. In January, 1973, the trusteeship of the lessor was transferred from the Catholic Bishop of Peoria as trustee to the Commercial National Bank of Peoria as trustee and the lessee was notified of such change. On February 5, 1973, Palmer posted a 5-day notice on the premises declaring a forfeiture of the lease.

On February 15, 1973, Arthur Nichelson went to Palmer's office and was advised that the lease was deemed forfeited for non-payment of rent. Nichelson, according to Palmer, indicated the corporation was unable to pay the rent, that he considered the contract forfeited and indicated that they were intending to sell the business to Vertigo West, Inc. Palmer prepared a document which was signed by Arthur Nichelson as president of Three Sisters, Inc., which document recited the execution and forfeiture of the lease and in consideration of the termination of the lease, Three Sisters, Inc., and its guarantors were released from any obligations under the lease both past and future. A copy of the document signed by the trustee was forwarded to Nichelson on the following day. On the same day, February 16, 1973, the trustee entered into a lease with Vertigo West, Inc. According to the affidavit of Donald Fernandes, president of Vertigo West, Nichelson had called him on February 15 asking whether he should sign the document and was advised by Fernandes that it was all right to do so. Although the record is not clear as to what thereafter transpired and it is immaterial so far as the issues of this case are concerned, it may be inferred that the contemplated arrangements between Three Sisters, Inc., and Vertigo West, Inc., were not satisfactory to Three Sisters. Nichelson's affidavit, filed in opposi-

tion to the motion for summary judgment, stated that Three Sisters had three directors including himself, Verdia Nichelson and one Charles Johnson. According to the affidavit Nichelson was president· of Three Sisters, Inc. at the times relevant to this controversy and he admits the execution of the document on February 15, 1973. However, he states he was told by Palmer that legal action would be commenced against him if the release were not signed and further that he did not read or understand the document and did not consult his attorney before signing it. According to Nichelson, rent payments had been made and received more or less irregularly during the period prior to September 15, 1972, and even though the premises may have been padlocked at the time the 5-day notice was posted, the corporation had. not abandoned the premises or removed its property thereform.

The final affidavit considered by the trial court was that of· Bernard Rosenberg who indicated that he was financially interested in the tavern business conducted by Three Sisters, had helped in the purchase of the business and had co-signed an obligation of the corporation in the amount of $18,000 secured by the fixtures and other equipment located in the tavern. The affidavit further recited that Rosenberg's interest in the business was known to Palmer, and that on one occasion in the past he had been notified of a rental delinquency which had been paid but was not notified of the business's delinquency during the period prior to February 15, 1973. In January, 1973, according to Rosenberg, he had a conversation with Palmer indicating that a purchaser of the business had been secured if a transfer of the lease and liquor license could be affected. He heard no more from Palmer and learned of Nichelson's execution of the release some time after it was executed.

■ ■ We have summarized the facts at some length because where, as in this case, the controversy is disposed of pursuant to a motion for summary judgment, the court of review is required to determine whether there are any genuinely disputed issues of fact material to the resolution of the controversy. (*Wilcox v. Natural Gas Storage Co.*, 24 Ill.2d 509, 182 N.E.2d 158; Ill. Rev. Stat. 1971, ch. 110, sec. 57.) It is in the application of the foregoing rule that the parties disagree.

In its argument the appellant first contends that the allegations of fact indicate the forfeiture of the lease was improper and in this connection insists that because late payments had been accepted in the past, lessor was not entitled to forfeit the lease without some further notice that payments would be expected on time. Additionally, the appellant claims the notice posted on the premises was improper and insufficient because the lessee was in possession of the premises. However, we find it unnecessary to determine whether there is or is not a factual dispute con-

cerning the right of the lessor to forfeit the lease or his procedures undertaken because in our view the release document if valid is dispositive of the issues raised on this appeal.

This brings us to appellant's second assignment of error, namely that the release document was invalid because Nichelson had no authority to execute a release as president of Three Sisters, Inc. As indicated in the statement of facts, Nichelson in his affidavit suggested that he had not read and did not understand the release but no claim is made in this court of any fraud or misrepresentation in the execution of the release and consequently whatever effect such allegations were intended to have is not material to the issue discussed in appellant's brief on this appeal.

The appellant has referred to several cases in support of the general rule that the president of a corporation does not have implied power to make a contract which is unusual or extraordinary. *Bleck v. Cosgrove*, 32 Ill.App.2d 267, 177 N.E.2d 647; *Central Republic Trust Co. v. Evans*, 378 Ill. 58, 37 N.E.2d 745; *Sacks v. Helene Curtis Industries, Inc.*, 340 Ill.App. 76, 91 N.E.2d 127.

■■ We have reviewed the foregoing cases cited by the appellant but do not find the factual situations to which the rule was applied supportive of the claim that Nichelson lacked implied authority in the instant case. We note that this is a case where the corporation itself is urging that its president lacked the implied authority to execute the document and under such circumstances it has the affirmative duty of establishing this claim. The only fact referred to in the affidavits is that of Nichelson himself who states that there are three directors on the board of directors of Three Sisters, Inc., and the board had not approved the termination of the lease. Under the circumstances of this case, we believe this fact is immaterial since so far as the record shows the lease itself was entered into by Nichelson in the exercise of his implied authority and, in the absence of any notice to the lessor to the contrary, we believe that Nichelson had implied authority to terminate the lease.

For the foregoing reasons, the judgment of the circuit court of Peoria County is affirmed.

Judgment affirmed.

SCOTT, P. J., and DIXON, J., concur.