Anthony Warszawa, Appellant, v. White Eagle Brewing Company, Appellee.

Gen. No. 40,455.

Opinion filed April 10, 1939.   Rehearing denied April 24, 1939.

WILLIAM J. REMUS, of Chicago, for appellant.

PEDEN, MELANIPHY, RYAN & ANDREAS and LAWRENCE F. ZYGMUNT, all of Chicago, for appellee; JOHN C. MELANIPHY, of counsel.

MR. JUSTICE O'CONNOR delivered the opinion of the court.

Plaintiff brought an action against defendant to recover $6,006 claimed to be a balance due him for wages for work done as carpenter and laborer for defendant. Defendant denied liability, claiming plaintiff had been paid in full. There was a jury trial and at the close of the evidence defendant moved for a directed verdict. The court reserved its ruling on the motion and submitted the case to the jury; the jury returned its verdict for $6,000 in plaintiff's favor; defendant made a motion for a new trial and for judgment notwithstanding the verdict; the court sustained the latter motion and plaintiff appeals.

The record discloses that defendant owned a brewery in Chicago which was closed during prohibition, and apparently in the beginning of 1933 when it appeared that the prohibition law would soon be repealed it began to prepare to operate its brewery again. About the first of February, 1933, defendant's president, John Krypel, employed plaintiff to work at the brewery.

Plaintiff's claim is that it was agreed between the parties that he was to be paid $13 a day which was the union scale for carpenters at that time; that defendant was short of money and it was agreed that plaintiff was to be paid $15 a week and later when the brewery was in operation and began to sell beer at a profit, he would be paid the balance due him, "either by cash or in the form of stock of said corporation of the face value of said accumulated wages"; that he went to

work about that time doing carpenter work most of the time but also working as a laborer around the brewery off and on.

Plaintiff's evidence is further to the effect that shortly after going to work in February, 1933, he was paid $15 a week, later $20, then $25, and still later $35. He began work about February 1, 1933, and continued to April 30, 1937. After deducting what he received his claim for the balance is as follows:

"February 1, 1933, to June 30, 1933..........$776.00
July 1, 1933, to November 30, 1933............ 526.00
December 1, 1933, to May 31, 1934............ 800.00
June 1, 1934, to October 31, 1934.............. 822.00
November 1, 1934, to March 31, 1935.......... 600.00
April 1, 1935, to August 31, 1935............. 720.00
September 1, 1935, to January 31, 1936....... 400.00
February 1, 1936, to June 30, 1936............ 580.00
July 1, 1936, to November 30, 1936............ 500.00
December 1, 1936, to April 30, 1937........... 262.00

Total .........................$6,006.00"

($5,986.00)

The evidence further shows that Krypel, president of the Brewery Company, was succeeded by Anton Gorecki about June, 1933, and plaintiff testified that when Mr. Gorecki became president he entered into the same contract as that theretofore made with the former president, Krypel, namely, that plaintiff was to be paid $13 a day, draw $15 a week, and when beer was being sold at a profit by defendant the balance would be paid to him in cash or in stock of the Brewery Company. Plaintiff further testified, and was corroborated by a number of witnesses, that from time to time he asked Gorecki when he was to be paid the balance of the wages coming to him, but was put off with the statement that the brewery was in need of funds and that he would later be paid in full as agreed.

John Krypel, president of the brewery at the time plaintiff was employed, called by defendant, testified that he was first connected with the defendant brewery in June, 1932, at which time he was elected president; that he resigned about 11 months thereafter and was then made general manager, which position he occupied until August, 1934, when he left, and at the time of the trial was president of a brewing company in Joliet; that he had known plaintiff 15 or 20 years; that plaintiff had done carpenter work for him in constructing a building for him personally; that he saw plaintiff the latter part of 1932 or 1933; that plaintiff was looking for a job and he told plaintiff if he would come to the brewery he would give him work at $15 a week to start; that he afterward gave him raises, first to $20 then $25 a week; that he never agreed to pay him $13 a day and denied having made any contract as testified to by plaintiff.

The books of defendant company are in evidence and show plaintiff was paid by check weekly, and there is no showing that there was any amount still due him. The evidence also showed that plaintiff owned stock in defendant brewery for awhile and attended a number of stockholders' meetings; that at such meetings the financial statements of the company were read and plaintiff made no complaint that they did not show that the brewery owed him money. There is no dispute about this, but plaintiff says the reason he did not complain was that Mr. Gorecki, the president, who died in February, 1937, had, more than a year before the trial, told him not to say anything about it. Defendant offered further evidence to the effect that it never heard of the claim until after plaintiff quit or was discharged about April 30, and that the directors first heard of his claim about July 6, 1937, when plaintiff's lawyer wrote defendant demanding $6,000. The evidence shows that the brewery made a net profit for the six months ending December 31, 1934, of $69,563.44.

The verdict of the jury was rendered May 26, 1938, and June 3 the motion for a new trial and for a judgment notwithstanding the verdict came on for hearing. Counsel for defendant said: ''If the Court please, on this motion for a new trial and for a judgment, notwithstanding the verdict, I wish to argue these various points''; that the contract was void because it was not in writing, contrary to the statute of frauds; that the president of defendant company had no power to make the contract claimed by plaintiff, on the ground that the agreement was secret; and further, that defendant's president had no power to make a contract to pay plaintiff either in money or in stock of the brewery — that it was such an unusual contract that the president could not make it; that the testimony of plaintiff and his witnesses as to a conversation between plaintiff and Gorecki, who has since died, was incompetent under sec. 4 of the Evidence Act; that plaintiff's testimony as to the contract of hiring was of no value when all the evidence was considered; that there was no proof that justified the verdict.

Counsel for plaintiff in his brief refutes each of these contentions. In deciding the matter the court, after argument of counsel, said: ''I find it most difficult to believe the theory that plaintiff's suit was based upon; . . . in 1933, at the time of the depression, that the president of a company would hire a carpenter, with thousands of them in the city out of work, and agree to pay him $13 a day, not then, perhaps, but . . . when the brewery began to put out beer,'' and especially so when the plaintiff's testimony was denied by the then president of the brewery company. The court further said, it ''appears to me to be unbelievable, that a president or any officer of that corporation used that carpenter to do general labor, and the record is quite convincing that he was used to do general labor work,

such as carrying grits and carrying other things that were necessary and unloading cars from time to time, once a week, once a month, or whenever it was necessary" and pay him $13 a day with thousands of men out of work. The court then said he thought the contract came under the classification of "unusual" and that the president could not enter into such a contract; "that a president of a corporation can not enter into an unusual contract or a secret agreement and bind his corporation"; that his view of the evidence was that plaintiff was hired for $15 a week with an agreement that as things got better they would raise his wages and that this was done, plaintiff being raised from $15 to $35 a week. The court then said defendant had raised several points — the statute of frauds, the admission of incompetent evidence, power of the president to make the contract — and the matter was continued so that counsel might further look up the law on these points. Later, June 9, after further argument the court said he was still of the same opinion, and entered judgment notwithstanding the verdict.

Defendant contends that the "agreement is void, not being in writing and being contrary to the Statute of Frauds." This contention is apparently based on the proposition that the contract was not to be performed within a year. We think there is no merit in the point. The hiring was from week to week and the contract might be performed within a year. Furthermore, the contract was fully performed by plaintiff and in these circumstances defendant is estopped from relying upon the statute of frauds. Executed contracts are never within the statute of frauds. *Swanzey v. Moore,* 22 Ill. 63; *Mead v. Chicago & Northwestern Ry. Co.,* 189 Ill. App. 323.

Defendant further contends the court erred in permitting plaintiff and four of his corroborating wit-

nesses to testify, over objection, as to alleged conversations between plaintiff and Gorecki, the deceased president, and in support of this counsel cite section 4, ch. 51, Ill. Rev. Stat. 1937 [Jones Ill. Stats. Ann. 107.070]. The pertinent part of that section is: "in every action, suit or proceeding a party to the same who has contracted with an agent of the adverse party — the agent since having died — shall not be a competent witness as to any admission or conversation between himself and such agent, unless such admission or conversation with the said deceased agent was had or made in the presence of a surviving agent or agents of such adverse party."

Plaintiff testified as to what was said by himself and Gorecki regarding the terms of his employment. Afterward he gave further testimony as to what was said by the parties when he, on a number of occasions, asked for the payment of the balance then due him. Under the provisions of the statute quoted, plaintiff was the only one who was disqualified. · The four corroborating witnesses were in no way disqualified and their testimony was clearly competent. Plaintiff's evidence as to these conversations would be admissible if his four corroborating witnesses were "agents" of defendant brewery. We think the four witnesses were not such agents as would authorize plaintiff to testify. They were mere employees and we think their duties were not such as to qualify them as "agents" within the meaning of the statute. *Adams Express Co. v. Oglesby,* 215 Ill. App. 94. The objection to plaintiff's testimony as to these conversations should have been sustained and the evidence excluded. The fact that defendant's counsel cross-examined plaintiff as to the conversations did not waive the objection. *Chicago City Ry. Co. v. Uhter,* 212 Ill. 174.

Defendant further contends that the contract of employment upon which plaintiff predicates his suit was

a secret and unusual contract and not within the implied powers of the president of defendant corporation. The president of a corporation is by virtue of his office presumed to have authority to execute such ordinary contracts as are required in the everyday business of the company. *Quigley v. Macqueen & Co.,* 321 Ill. 124; *Bloom v. Vehon Co.,* 341 Ill. 200; *Domestic Bldg. Assoc. v. Pasquale Guadiano,* 195 Ill. 223; *Nagle v. J. L. Hanson Co.,* 262 Ill. App. 160. Under this rule of law, obviously the president of the defendant corporation would be authorized to enter into the usual contract of employing plaintiff to do work as a carpenter and as a laborer. Counsel for both parties agree that this is the law, but defendant contends the contract was secret and unusual and therefore unenforceable.

We think the agreement in the instant case was unusual and to a great extent secret. It was certainly unusual for defendant's two presidents to employ plaintiff at the wage of $13 a day and agree to pay him $15 weekly on account and agree to pay plaintiff the balance either in cash or in stock of defendant brewery when and if its business would be operated at a profit. Obviously, the president of defendant was not authorized to agree to give stock in the defendant company to plaintiff in payment of his wages. Such an agreement could not be entered into without action by the board of directors. We are also of opinion that the agreement as claimed by plaintiff was a secret agreement within the meaning of the law. There was nothing in the records of defendant corporation to indicate anything was due and owing to plaintiff, but on the contrary the financial statements read at the stockholders' meetings and the books of the company would indicate that he was paid in full. If the president of a corporation were authorized to make contracts of this character without action of the directors and without

notice to or knowledge of anyone, the directors would not at any time know whether the company was solvent or insolvent or whether it was headed for bankruptcy. The law will not permit the making or enforcement of such contracts. *Mayhew v. Edward G. Budd Mfg. Co.*, 258 Mich. 381; *Massman v. Louisiana Mfg. Co.*, 177 La. 999, 149 So. 886.

The court did not err in entering judgment for defendant notwithstanding the verdict. *Ziraldo v. Lynch Co.*, 365 Ill. 197; *McNeill v. Harrison & Sons, Inc.*, 286 Ill. App. 120; *Farmer v. Alton Bldg. & Loan Assoc.*, 294 Ill. App. 206; *Synwolt v. Klank*, 296 Ill. App. 79.

The judgment of the municipal court of Chicago is affirmed.

*Judgment affirmed.*

McSurely, P. J., and Matchett, J., concur.