P. Warren Smith, Appellee, v. Shoreline Printers & Publishers, Inc., Joe M. Cooksey, Landfield Finance Company, and National Committee on Boys and Girls Club Work, a Not-For-Profit Corporation, Defendants.
On Appeal of Landfield Finance Company, Appellant.

Gen. No. 46,487.

First District, Third Division.

June 22, 1955.

Rehearing denied July 13, 1955.

Released for publication July 15, 1955.

Koven, Koven & Salzman, of Chicago, for appellant; Henry H. Koven, and Howard R. Koven, both of Chicago, of counsel.

Fink & Miller, of Chicago, for appellee; Eli E. Fink, Byron S. Miller, and Harry Golter, all of Chicago, of counsel.

MR. JUSTICE FEINBERG delivered the opinion of the court.

Plaintiff sued to recover the amount due on a note, executed by defendant Shoreline Printers & Publishers, Inc., and Joe M. Cooksey, to secure which an assignment of an account receivable due from the defendant National Committee on Boys and Girls Club Work to Shoreline Printers & Publishers, Inc., was given to plaintiff. Landfield Finance Company held a prior assignment of this account receivable. At the trial plaintiff claimed that the Landfield Finance Company had agreed to subordinate its prior assignment of said account to the assignment given to plaintiff,

which induced plaintiff to accept the assignment and to loan the money represented by said note to Shoreline Printers & Publishers, Inc. A trial without a jury resulted in a finding and judgment against defendants Shoreline Printers & Publishers, Inc., Cooksey and Landfield Finance Company. The appeal is only by Landfield Finance Company.

For convenience defendant Shoreline Printers & Publishers, Inc. will be referred to as Shoreline; Landfield Finance Company as Landfield, and the National Committee on Boys and Girls Club Work as the Club.

The complaint in substance alleges that Shoreline wrongfully secured payment from the Club of the account receivable, and wrongfully paid over the amount received to Landfield; and that defendants had knowledge of the assignment of the account receivable to plaintiff and knowledge of the subordination of the Landfield assignment to that of plaintiff.

For a better understanding of the question involving the authority of M. S. Landfield, as president, to subordinate the prior lien of Landfield to that of the plaintiff, it is necessary to briefly outline the corporate structure of Landfield. The evidence establishes that at the time of the transaction involved, M. S. Landfield was president of the finance company, George Landfield, his son, vice president, secretary and general manager, and Mabel Landfield, wife of M. S. Landfield, treasurer. There were 2,551 shares of stock of Landfield issued and outstanding, of which M. S. Landfield owned two shares; Mabel, his wife, owned 1,336 shares; George, the son, owned 646 shares; and the daughter of M. S. Landfield owned 567 shares. The directors were the three stockholders named. The bylaws of Landfield provide that the president shall have the active management of the business of the corporation.

The evidence on behalf of Landfield disclosed that George Landfield had general office supervision of

292

Landfield and passed upon all loans made by Landfield. He testified, "Every loan goes through me." He had rejected many of his father's loans. No loan in excess of $2,000 had been made by the president without conferring with him.

Shoreline was at the time indebted to Landfield in excess of $100,000, to secure which Shoreline executed a chattel mortgage to Landfield of its physical assets and the assignment of the account receivable in question.

It appears from the evidence that M. S. Landfield became interested in another project during the year 1951–1952 and devoted most of his time to that project, leaving the supervision and management of Landfield to his son George. Prior to the transaction in question, plaintiff for many years had known defendant Cooksey, who was president of Shoreline, and extended some financial aid needed by Cooksey in his business. It further appears that at the time of the transaction in question, Cooksey needed immediate financial help to meet his payroll and offered plaintiff an assignment of the account receivable of the Club; that he informed plaintiff of the prior assignment of the account receivable to Landfield and promised to secure the consent of Landfield to subordinate the latter's assignment.

Cooksey testified that he and his foreman, Lambert, went to M. S. Landfield's home on Sunday evening, September 7, 1952, and informed M. S. Landfield of the need of Shoreline to meet its payroll due on the Monday or Tuesday following; that Shoreline had no money available to meet it; that the printing work in process would yield Shoreline additional revenue, estimated between $12,000 and $20,000; that plaintiff was willing to loan Shoreline $2,500 to meet the payroll, which, together with a previous indebtedness of $500 to plaintiff, would total $3,000, to secure which Cooksey had promised to give plaintiff an assignment

293

of the account receivable of the Club, amounting to $5,100; that Landfield then agreed to the execution of the assignment of the account receivable to plaintiff and agreed to subordinate the Landfield assignment, so that the proceeds of the account receivable could be paid to plaintiff; and that Cooksey reported to plaintiff this meeting with M. S. Landfield and the agreement made with him.

It further appears that plaintiff, apparently to verify the statement of Cooksey, called the office of Landfield and asked for M. S. Landfield. He testified that someone, answering, said he was M. S. Landfield and confirmed to plaintiff over the telephone that he had agreed with Cooksey that Shoreline could execute the assignment of the account receivable to plaintiff, and that Landfield would subordinate its assignment. M. S. Landfield denied that he had any such meeting with Cooksey and Lambert at his home, and denied that he had any such telephone conversation with plaintiff. Plaintiff testified that he addressed a letter dated September 8, 1952, to M. S. Landfield, c/o Landfield Finance Company, which confirmed the telephone conversation between plaintiff and M. S. Landfield, notifying him that they were loaning the money to Shoreline and accepting the assignment of the account receivable of the Club, and intended to collect the proceeds of that invoice to repay plaintiff's loan. Landfield denied receiving this letter. A copy of the letter, as secondary evidence, was received over objection of defendant that a sufficient foundation had not been laid to admit secondary evidence.

The controlling question arising upon this record is whether M. S. Landfield, as president, had implied authority or acted within any apparent scope of authority in allegedly agreeing to the subordination of the assignment to Landfield. Admittedly, there is no express authority from the board of directors of Landfield to enter into such an agreement to subordinate,

294

nor is there any such express authority to the president in the by-laws.

■ In Sacks v. Helene Curtis Industries, Inc., 340 Ill. App. 76, this court, reviewing the cases in Illinois and elsewhere upon this question, stated:

" 'The president of a corporation is by virtue of his office presumed to have authority to execute such ordinary contracts as are required in the everyday business of the company. Quigley v. Macqueen & Co., 321 Ill. 124; Bloom v. Vehon Co., 341 Ill. 200; Domestic Bldg. Assoc. v. Pasquale Guadiano, 195 Ill. 223; Nagle v. J. L. Hanson Co., 262 Ill. App. 160.'

"The president would not, on the other hand, have any implied authority to contract to give an employee as part of his compensation an interest in the principal's business or its profits. Mechem on Agency (2d) Vol. 1, p. 711, § 988.

"It is well settled that a president of a corporation has no implied authority to make a contract on its behalf which is unusual and extraordinary. . . .

" . . . The reasoning in a number of cases, among them Central Republic Trust Co. v. Evans, 378 Ill. 58, 65; Warszawa v. White Eagle Brewing Co., 299 Ill. App. 509, 517; and Washburn v. Hoxide Institute, 249 Ill. App. 194, 197, shows that the burden of proof is on plaintiff to produce the by-laws of the corporation or some resolution of the board, or other proof of such extraordinary authority."

Warszawa v. White Eagle Brewing Co., 299 Ill. App. 509, involved an alleged agreement on the part of the president to pay one of its employees, in addition to his regular compensation, a percentage of the profits of the company. This court held:

"If the president of a corporation were authorized to make contracts of this character without action of the directors and without notice to or knowledge of anyone, the directors would not at any time know whether the company was solvent or insolvent or

whether it was headed for bankruptcy. The law will not permit the making or enforcement of such contracts."

██ Directly in point upon the implied authority of a president to subordinate a lien held by a corporation is Myrtle Ave. Corp. v. Mt. Prospect Building & Loan Ass'n, 112 N. J. L. 60, 169 Atl. 707, where the corporation had a first mortgage. A junior mortgagee claimed an agreement had been entered into between the president of the corporation holding the first mortgage and the junior mortgagee, whereby the first mortgage was to be subordinated to that of the junior mortgagee. Speaking of the authority of the president, the court there said:

"Such an undertaking would, to an extent and during the life of the agreement, make the first mortgage a junior incumbrance. There is no proof that the plaintiff had knowledge of, or indeed that there was, any earlier action of the same sort by the president. The president had no implied or apparent authority."

Fletcher on Corporations, Vol. 2, p. 756, § 617, states the rule to be:

"The president of a corporation has no implied authority merely by virtue of his office to surrender rights of a corporation. . . .

"It has been held that he [president] has no authority to release valid claims in favor of the corporation, to surrender a note in favor of the corporation, or bind the corporation by an agreement that the maker shall not be held liable thereon, to release sureties, or agree that they shall not be held liable, to bind the corporation by an agreement that an endorser on a note discounted by it shall not be held liable . . . to discharge a mortgage in favor of the corporation. . . .

"All of the foregoing present instances of the assumption by such officer of unusual, exceptional, and extraordinary power, are clearly outside the ordinary

course of affairs and beyond his apparent or ex officio authority. Under firmly established principles, it devolves upon those claiming rights by virtue of the exercise of that power to inquire as to its existence and as to the facts which bring it into being."

■ Plaintiff contends that Landfield is a family corporation dominated by M. S. Landfield, who was permitted by the other members of the family to dominate the affairs of the corporation; and that implicit in such relationship must be the clear inference that they authorized and ratified what M. S. Landfield did in connection with the business of the corporation. We cannot assume, in the absence of satisfactory evidence, that Mabel Landfield, the wife, who owned the controlling interest in the company, was not in fact in control of her separate property rights, or that she could be regarded as a nominee of her husband, M. S. Landfield. Nor can we presume that the son and daughter, who owned the other shares of stock, were not equally in control of their rights arising out of their stockholdings.

In Yeskel v. Murray Holding Co., 140 N. J. Eq. 195, 54 A.2d 224, affirmed 141 N. J. Eq. 366, 57 A.2d 390, dealing with the subject matter of a family corporation, the court said:

"The defendant corporation is a family corporation, the stockholders being Sam Ehrlich, and his wife and their son. The evidence leaves the complainant in the situation where it has not shown that the contract sought to be enforced was the act of the corporation or the act of an authorized agent whose conduct was adopted and ratified by the corporation. . . . The proof is to the contrary for it clearly appears that the president . . . had no authority to agree to the changes. . . . The president had no power virtute officii to alter the provisions of a formal contract under seal entered into by the corporation itself. The

297

act of the president . . . . , unless it is shown to pertain to his official duty, or to be within the scope of his employment, which was not shown in this case, cannot be regarded as the act of the corporation, and is not binding upon it."

■ ■ There is no evidence that the corporate directors of Landfield or these stockholders knew about the alleged agreement of M. S. Landfield to subordinate the corporate lien involved in the assignment it held of the account receivable. In this connection, it will be observed that the letter of September 8th, claimed by Cooksey to have been sent by him, was addressed to M. S. Landfield and not to the company. Had the letter been addressed to the company and proper proof that in the regular course of the business it received the letter, and the corporation, with knowledge of the transaction referred to in the letter, permitted the plaintiff to make the loan and accept the assignment in question, we would have a different situation to consider in plaintiff's contention that the doctrine of estoppel should be applied to Landfield. There is no evidence of such corporate knowledge, which would be essential to create an estoppel, and the burden was upon plaintiff to prove it. Sacks v. Helene Curtis Industries, Inc., supra.

Plaintiff contends that estoppel against Landfield also results from the alleged fact that plaintiff advanced money for the payroll to complete the work in process, which was the subject matter of the assignment of the account receivable; that had the work not been completed, Landfield would have been unable to collect the proceeds of the account receivable; and therefore Landfield had the full benefit of the loan made by plaintiff. There is evidence to the contrary. Plaintiff's own witness, Lambert, the foreman of Shoreline, testified that the work on the floor, unfinished, was not included in the assignment of the account receivable given to Landfield, and that M. S. Landfield

298

■■■■■■■■■■■■■■■■■■■■■■■■■■■■

was so informed in the meeting of September 7, 1952, at his home.

Upon this record we are forced to conclude that the alleged agreement to subordinate was not binding upon the corporation. It is therefore unnecessary for us to pass upon the questions of the competency of the telephone conversation referred to and the secondary evidence of the September 8th letter.

Since plaintiff has no cause of action against Landfield, the judgment is reversed as to it.

Reversed.

KILEY, P. J. and LEWE, J., concur.