Emma Chambers, Plaintiff-Appellee and Cross-Appellant, v. John T. Shayne & Co., an Illinois Corporation, Defendant-Appellant and Cross-Appellee.

Gen. No. 48,147.

First District, Second Division.

June 30, 1961.

16

Henehan, Donovan & Isaacson, of Chicago (Edward V. Donovan, Jr., of counsel), for appellant.

Gottlieb and Schwartz, of Chicago (Charles D. Stein, of counsel), for appellee.

MR. JUSTICE BRYANT delivered the opinion of the court:

This is an action for a breach of an oral contract of employment for one year and the implied renewal for the subsequent year. The plaintiff, Emma Chambers, seeks as damages her full salary until the end of the second year following the termination of her employment and a full bonus for each of the two years. Defendant denied the making of or the existence of the contract. The jury returned a verdict in favor of the plaintiff for $8,106.19, an amount equal to her claimed salary and her bonus for the fiscal year 1956–7. Defendant appeals from the judgment entered on the verdict. In a cross-appeal, plaintiff urges that the court's sole error was in denying her motion for judgment notwithstanding the verdict in the sum of $11,736.19, and she requests a judgment in her favor for this amount.

Defendant is a family-owned corporation engaged in the retail of women's clothes. Their main store is on the corner of Michigan Avenue and Randolph Street in Chicago. Plaintiff started working for the store in 1927, and since 1941, was the buyer for the coat and

18

suit department. Her duties required her to make "buying trips to New York, taking care of merchandise, seeing that it was properly shown, sold and advertised and doing considerable selling."

On July 15, 1957, upon her return from a two-week buying trip in New York, the plaintiff was called into the office of the defendant's president, Thomas Considine, Jr. and informed that she was discharged as a buyer for the company. She was not given any advance notice of this decision to replace her in mid-season, nor was she given any special termination pay. Upon inquiring whether the discharge was due to a dissatisfaction with her work, she was told that it was because business was bad and that it was not her fault. Considine asked her to stay on as a saleslady at $75.00 a week, which she declined. Her basic salary at that time was $8,000 a year, or $666.66 per month.

The plaintiff's claim is for her salary for the remainder of the year and her bonus for the two years. The company is on a fiscal year extending from February 1 and terminating on January 31. The bonus is determined around February 10th, on the basis of the prior year. The plaintiff says that her bonus is computed on the basis of 1½% of the net sales in her department over $200,000, which would amount to $3,772.90 for the 1956 fiscal year, and $3,630.00 for the 1957 fiscal year.

The plaintiff testified that in 1941, when she first assumed her duties as a buyer, she was told by Tom Considine that her percentage would be 2½% over $150,000 and her salary "was about $475.00 a month, and that would be it for the coming year." Her basic salary gradually increased over the years, and every year from 1941 to 1956, on about February 10th, Thomas Considine, Jr. would come to her office and personally present to her the bonus based on the pre-

19

vious fiscal year. She testified that this bonus was conditioned on the sales in her department, and was not dependent on the company's overall profit. Thomas Considine, Jr. and his brother, Vincent Considine, the former manager, said that it was conditioned on the company's overall profit margin.

She testified that on February 14, 1956, she had a conversation with Tom Considine at the store when he handed plaintiff her bonus check, as was the custom. Her testimony was that at that time, Considine informed her that the bonus arrangement would be changed from 2½% over $150,000 to 1½% of the net sales over $200,000. She told Considine that she "had better make a note of that" and pulled out the envelope and made the following penciled notation on it: "2/14/56 After 200 1½ perce".

The plaintiff testified that in February 1957, at the close of the 1956 fiscal year, she failed to receive her bonus. Tom Considine had been ill, so she talked to the comptroller, a Mr. Wangnett (who was deceased at the time of the trial) and was advised that no bonus checks had been issued for the fiscal year 1956. She subsequently had a conversation with Vincent Considine about her failure to receive a bonus. Vincent Considine told her that there wouldn't be any bonuses because the firm didn't make any money. The plaintiff thereupon vigorously denied that her bonus was based on profits and told him that "Mr. Tom Considine always made it very emphatic my bonus was made on certain figures, not on profit." Vincent Considine then said: "I am going to talk to my brother about it and find out what the arrangements were." The plaintiff said that there were no further conversations on the terms of her employment.

Thomas Considine, Jr., testifying for the defendant, denied that he presented the plaintiff with a bonus check for 1954 or 1955, that he had a conversa-

20

tion with her on February 14, 1956, or that he discussed with Mrs. Chambers the terms of employment in 1955 or 1956. He further said that he never promised to pay Mrs. Chambers a bonus in connection with her duties for the fiscal year, during the course of any fiscal year, or before the fiscal year began. He said that he never had any agreement with the buyers to pay them a percentage of the sales, however, upon further examination, it was revealed that he did have an arrangement with a Rudolph Schlam, a buyer for the fur department, wherein he agreed to pay him a salary of $4,500.00 a year and 2½% of the net sales of the fur department in excess of $400,000. Considine at first contended that it must have been conditioned on profits, but finally concluded with some reluctance that the agreement with Schlam was based on a percentage of the net sales in his department. He referred to the plaintiff's discharge as a "discussion of the status of her employment". He recalled her dismissal as taking place after she had returned from her vacation and prior to a buying trip.

Vincent Considine, a member of the Illinois Bar, testified that he handled defendant's fiscal matters; that in 1955, he became the general manager and assumed the duties of his brother, Thomas Considine, Jr., who had become seriously ill; and that in February, 1956, he presented plaintiff with a bonus check for the prior fiscal year. He said that he was in daily contact with the plaintiff, but that she never discussed the matter of the nonpayment of the bonus with him. He said that Mrs. Chambers never told him about the agreement she had with his brother, nor did he have any recollection about her asking him to talk to Tom about any agreement.

The financial data of the corporation pertinent to the case included the profit-and-loss position of the defendant, the gross business done by it, the aggre-

21

gate bonuses paid to its employees, the bonuses paid to plaintiff, and the sales of the department under plaintiff's jurisdiction year by year. These exhibits were introduced to controvert the plaintiff's position that her bonus arrangement with the company was not dependent upon the overall profit margin of the company. This documentary evidence did indicate that the plaintiff was not properly compensated in the past in accordance with her special arrangement with Considine; however, it also established that her bonus was not conditioned on the company's overall profit margin. For example, in the fiscal year 1948–9, the plaintiff had an increase in the amount of her bonus, reflecting the increase in the sales of her department, although the total profits decreased as did the total bonuses paid to employees. And in the fiscal year 1950–51, her bonus was decreased, corresponding to the decrease in the sales in her department, although the total profits showed an increase as did the total amount of bonuses paid to all employees for that year. No evidence was introduced as to whether the total number of employees participating in the bonus plan fluctuated over the years in question. This evidence, taken with all favorable inferences for the plaintiff, would seem to substantiate her special arrangement with the company.

Plaintiff said she was fired in mid-season without any special termination pay. Defendant introduced in evidence the plaintiff's earning record which showed that she was paid her normal monthly payment of $666.66 on July 15, 1957, the date of her discharge. Mr. Blommaert, the present comptroller for the defendant, testified that the plaintiff was paid on the 15th of the month, for the entire month. The witness admitted that the earning statement did not indicate the pay period, but that the period was shown on a confidential payroll which was not introduced into evi-

22

dence. The defendant took the position that it customarily paid the plaintiff two weeks in advance and that the payment in the middle of the month was for the entire month. However, even if we were to assume that this was the procedure, it would seem that such an arrangement supports the plaintiff's position, which was that her salary was on a yearly basis, payable monthly.

Defendant asserts that the plaintiff was impeached by numerous contradictory statements in her pretrial deposition and in the trial. A fairly typical example was the plaintiff's answer to the question in the pretrial hearing relative to the year the commission was changed from $2\frac{1}{2}\%$ over $150,000 to $1\frac{1}{2}\%$ over $200,000:

"Q. For how long has it been $1\frac{1}{2}\%$ over $200,000?

A. Oh, that was, could have been around 1954, when they increased our salaries.

Q. From 1954 on?

A. Yes, about that, I couldn't say specifically."

Further on in the pretrial deposition, she stated that the last oral agreement she had with the defendant was in February 1956. At the close of the oral interrogatories to the plaintiff and during the course of the same deposition, plaintiff's counsel propounded the following interrogatories to her and received the following answers:

"Q. Mrs. Chambers, in this conversation you testified you had with Thomas Considine, Jr. in February of 1956, I believe you said there was a discussion about percentage for the last year?

A. That is right.

23

Q. What was the percentage discussion?

A. One and a half per cent over $200,000."

The sole issue of fact pending at the trial was whether the parties had entered into an oral contract of employment on February 14, 1956. This issue was specifically and directly resolved by the jury in favor of the plaintiff by the following special interrogatory and the answer thereto:

"Do you find from the evidence under the instructions of the Court that the defendant John T. Shayne & Co. on February 14, 1956 entered into a contract of employment with the plaintiff, Emma Chambers, for the fiscal year beginning February 1, 1956 and ending January 31, 1957?

Answer: Yes."

The question on this appeal is whether the verdict of the jury is contrary to the manifest weight of the evidence; that is to say, whether it is palpably erroneous; whether the contrary conclusion is clearly evident. Bunton v. Illinois Cent. R. Co., 15 Ill App2d 311, 323-4, and cases cited.

We are of the opinion that the issue necessarily turned on the question of the credibility of the witnesses. The jury believed the plaintiff. The minor discrepancies in her story could easily be attributed to the fact that she was in her seventies and tended to confuse elements of an earlier conversation with the agreement of February 14, 1956. However, as we have pointed out earlier, she was not impeached in the essential elements, and even in the pretrial hearing, she clarified the possible ambiguity resulting from the interrogation as to the date of the last agreement with the defendant. "Where there is a contrariety of evidence on both sides, and the facts and circumstances, by a fair and reasonable intendment,

24

will warrant the inferences of the jury, reviewing courts ordinarily will not disturb the verdict of the jury, even though it may appear to be against the weight of the evidence, or the correctness of the finding may be doubtful, and this is true notwithstanding a different verdict would have been rendered if the court had been sitting as a jury." . . . "The appellee is entitled to all the favorable inferences to be drawn from the testimony." 2 ILP, sec 778, pp 725, 726, 728. "A verdict will not be disturbed for mere doubts as to the proof of a fact; and the fact that evidence of a witness is not consistent in all its parts will not warrant a reversal unless those parts of the testimony challenged as inconsistent relate to the facts on which the right to recover rests." 2 ILP, sec 777, p 721.

■■ The jury had an adequate basis to find that the plaintiff's term of employment since 1941 was on a year-to-year basis. Although there was no express stipulation which fixed a time for the continuance of her employment, "that element of their contract depended on the understanding and intent of the parties; which could be ascertained only by inference from their written and oral negotiations, the usages of the business, the situation of the parties, the nature of the employment, and all the circumstances of the case. It was an inference of fact, to be drawn only by the jury." Vol 1, Williston on Contracts, sec 39, p 105. Davis v. Englestein, 263 Ill App 57. In the absence of any proof by the defendant of changes in the agreement after the fiscal year 1956 was concluded, the plaintiff continued performance under her contract based on the conversation which took place on February 14, 1956. The defendant thereby became obligated to the plaintiff for the fiscal year 1957 on the same terms as the prior year. As the Supreme Court said in Ingalls v. Allen, 132 Ill 170, 173, 174, 23 NE 1026:

25

■■■

"The rule undoubtedly is, that if one person employ another at an agreed price for a time certain, and the employment is continued after the expiration of the time agreed upon without any new agreement as to price, the presumption is that the parties understood that the original rate of compensation is also to be continued . . . ."

■ Defendant also contends that the court erred in giving of instructions. We think that the part of given instruction No. 2 tendered by the plaintiff that if "defendant has not proved by the greater weight of the evidence that the parties agreed to any changes in the agreement of employment" tends to confuse the jury on the subject of the burden of proof. We do not find any criticism in the giving of plaintiff's instructions No. 1 and 3. We are of the opinion that Plaintiff's given instruction No. 4 also has a tendency to confuse and should have been refused. The trial judge gave sixteen of defendant's instructions against only four by plaintiff. Although two of the plaintiff's instructions were not framed properly, we do not regard the giving of these instructions as reversible error.

■ Defendant's final contention is that the court erred in receiving in evidence plaintiff's exhibit No. 1, the memorandum made on the envelope by plaintiff on February 14, 1956, at the time of her conversation with Thomas Considine, Jr. Considine at that time informed the plaintiff that her commission was to be reduced to 1½% over $200,000. The plaintiff then said: "I had better make a note of that" and put it on the envelope. She then testified that she showed the notation to Considine, and said: "This is going to be that" and he said, "Yes". It thus appears that the memoranda was properly admitted as a contemporaneous record of a transaction agreed on by the parties. 32 CJS, sec 696, p 588.

26

Plaintiff, in her cross-complaint, urges that the trial court committed reversible error in denying her post-trial motion for judgment notwithstanding the verdict in the sum of $11,736.19. Plaintiff recognizes that the test for determining whether judgment notwithstanding the verdict should have been entered is a different test than the test applied for determining whether the verdict is contrary to the manifest weight of the evidence. The former test is substantially the same as to whether a directed verdict should have been entered. It presents the single question as to whether there is in the record any evidence which, standing alone and taken with all its intendments most favorable to the party resisting the motion, tends to prove material elements of her case. The plaintiff has not met the burden of this test, for the issue of the 1957 bonus was controverted and there was a complete defense to her claim, "viewing all the evidence in the cause most favorably for the defendant (without attempting in any manner to weigh the evidence)". Paschall v. Reed, 320 Ill App 390, 396, 397, 51 NE2d 342. The trial judge correctly decided this issue in accordance with the requirements of the Civil Practice Act. Ch 110, sec 68.1, Ill Rev Stat.

Judgment for the plaintiff is affirmed and the orders denying the post-trial motions of the parties are affirmed.

Judgment affirmed.

FRIEND, P. J., concurs.

BURKE, J., dissenting:
Plaintiff, about 70 years of age, had been employed by the defendant for over 30 years. Upon the trial she was the sole witness in her behalf. Defendant operates a retail women's clothing store at the corner of Michigan Avenue and Randolph Street in Chicago.

She started working there in 1927. In 1941 she became the buyer for the coat and suit department. Her duties required her to make "buying trips to New York, taking care of merchandise, seeing that it was properly shown, sold and advertised and doing considerable selling." On July 15, 1957, on returning from a buying trip to New York for fall merchandise, and without any prior notice or complaint about her performance, she was called to the office of Thomas Considine, Jr., the then president of defendant, and offered a job in a reduced capacity as a saleslady at a salary of $75 per week. At that time she was receiving a salary of $666.66 per month. She had also been receiving a bonus, the amount of the last one, received on February 14, 1956, being $3,500. Plaintiff testified that the first conversation about salary and bonus was with Thomas Considine, Jr., in 1941. She said he told her that "your percentage will be 2½% over $150,000 and your salary" which she thought was "about $475 a month." She stated that every year after that until February, 1956, she had conversations with Considine "about salary around February 10th" and that her bonuses were computed on the basis of the fiscal year running from February 1st to January 31st.

She testified that on February 14, 1956, she had a conversation with Thomas Considine, Jr., at the store when he handed plaintiff her bonus check for the preceding fiscal year of 1955. She said that at this time Considine told her that her bonus arrangement would be changed from 2½% over $150,000 to 1½% of the net sales over $200,000. She inquired whether she would receive a raise in salary, to which he answered that the salary would be the same the coming year. The bonus check was in an envelope which she placed in a drawer without looking at the check. She told Mr. Considine she "had better make a note of that" and pulled out

28

the envelope and made the following penciled notation on it: "2/14/56 After 200½ perce." Plaintiff testified that she did not receive any bonus after the fiscal year 1955, given her on February 14, 1956, and that she did not receive any salary subsequent to her discharge on July 15, 1957.

She testified that in February, 1957, after the close of the 1956 fiscal year, she failed to receive her bonus based on the net sales of her department for the preceding year; that after making several requests of the comptroller, Mr. Wangnett, (deceased at the time of the trial) she was advised that no bonus checks had been issued for that year; that several months after January 31, 1957, she spoke to Vincent Considine, vice president of defendant, and that he told her there would be no bonuses for 1956 because the firm had failed to make any money. She responded that her bonus was not based on profits.

Thomas Considine, Jr., testifying for the defendant, denied that he presented the plaintiff with a bonus check for 1955, that he had a conversation with her on February 14, 1956 or that he promised her a bonus or commission based upon a percentage of the sales of her department. Vincent Considine testified that he handled defendant's fiscal matters; that in 1955 he became general manager and assumed the duties of his brother, Thomas Considine, Jr., who had become seriously ill; and that in 1955 and 1956 he presented plaintiff with a bonus check for the prior fiscal year. He testified further that he did not in 1955 or 1956 discuss with plaintiff the terms of her employment with the defendant; that bonuses had been paid to her for the fiscal years 1948 through 1955; and that the payment of and the amount of these bonuses was determined after the fact of performance and in the light of the defendant's over-all profit situation. No bonuses were paid for 1956 and 1957 to

29

anyone in the firm as there were no profits for those years. The profits and losses of the defendant for the years 1947 through 1957 and the aggregate bonus payments made to all employees for those years were established through the testimony of Ralph Gerhardt, an auditor. His testimony also established the yearly bonus payments to plaintiff for 1947 through 1955. The parties stipulated as to the sales of the department over which plaintiff had control for these years.

Defendant maintains that the judgment is against the manifest weight of the evidence. Plaintiff, calling attention to the rule that this court will not substitute its judgment for that of the jury where the facts leave room for different conclusions to be drawn by reasonable men, insists that she established the existence of an oral contract of employment for the fiscal year 1956, and that the continuation of her employment into the fiscal year 1957 without a new agreement renewed the term of employment at the same rate of compensation. Plaintiff's case rests solely on her testimony that an oral agreement was entered into on February 14, 1956, between herself and the defendant through Thomas Considine, Jr. At that time he was president. At the time of the trial he was not employed by defendant. On the trial defendant testified that the alleged change from $2\frac{1}{2}\%$ to $1\frac{1}{2}\%$ occurred in 1956. In her pretrial discovery deposition she testified that the alleged change occurred in 1954. Her original statement of claim alleged that the percentage of her supposed bonus was $1\frac{1}{2}\%$ over \$200,000 in 1954. It was not until her direct testimony at the trial that she said the $1\frac{1}{2}\%$ figure was first arrived at in 1956.

On direct examination she testified that during the alleged contract discussion with Thomas Considine, Jr. she asked him whether in view of the change in bonus percentage she would receive a greater salary and that he told her the salary would remain the same.

30

In her pretrial deposition she said that there was no salary discussion during this conversation. This testimony is consistent with her testimony in the pretrial deposition that the bonus or rate of commission change took place in 1954. She testified further that Thomas Considine, Jr. asked her during the course of the conversation of February 14, 1956, to look into the envelope in which he presented her a check for the 1955 bonus so that she might see the "change" in the supposed percentage. As the bonus check presented to her was for 1955, and according to her pretrial testimony, the "change" occurred in 1954, it is difficult to understand what change could have possibly been involved in 1956. It is also difficult to understand how Mr. Considine could reasonably have attributed to him a statement regarding a change in the 1956 check as it is undisputed that this was the third of a series of three bonus checks for each of the three previous years in the same amount. It is important to note that the logic for making the notation on the envelope was that the change was either effected in the future percentage or that a change was effected in her relationship with the company. She further testified that at the time of the alleged conversation Thomas Considine, Jr. told her that he "hoped" the next year's bonus would be better. In her deposition she testified that he "apologized" for the size of the bonus given for the year 1955. The statement that he apologized is more consistent with defendant's position that the bonuses awarded were based on the over-all profit picture of the company than as plaintiff claims, upon a fixed percentage of sales in her department. The language of apology indicates discretion rather than obligation arising from a contract.

Plaintiff's allegations as to the creation of a contract of employment with the defendant on February 14, 1956, and the terms of such contract are denied

31

by the testimony of defendant's officers. Thomas Considine, Jr. testified that he did not present a bonus check to the plaintiff on February 14, 1956, or for the prior year, and that he did not discuss with her the terms of her employment during the year 1956. Vincent Considine, a member of the Illinois bar corroborated this testimony. He stated that he presented the bonus check to her in 1956 and that no terms of employment were discussed with her. His explanation of the bonus policy of defendant as being dependent upon profits is corroborated by the undisputed testimony that no bonuses were paid for the fiscal year 1956.

The financial data of the corporation pertinent to the case included the profit and loss position of the defendant, the gross business done by it, the aggregate bonuses paid to its employees, the bonuses paid to plaintiff and the sales of the department under plaintiff's control year by year. These exhibits served to corroborate the evidence of the defendant, to render improbable the testimony of the plaintiff and to support the theory of the defendant. This documentary evidence refuted plaintiff's allegations that defendant's practice was to pay her a bonus or commission computed in accordance with a predetermined agreement to pay her a bonus equal to a fixed percentage of the sales of her department. These records substantiate the contention of the defendant that bonuses were paid to employees after the fact of performance upon a discretionary basis related to profit. These bonuses were, both for the plaintiff and other employees, substantial in highly profitable years, moderate in less profitable years and nonexistent in years when the corporation experienced a loss.

A variation in practice from the contractual requirements asserted by plaintiff whereby she was to be paid a bonus check equal to 2½% of sales in her depart-

ment over $150,000 was not only wide but continual. Thus plaintiff finds herself in the anomalous position of having relied upon the receipt of bonuses to corroborate her position, while any reasonable analysis of this practice achieves the contrary effect. Her failure to make any claim in this suit, or at any other time, for any amounts due for years prior to 1956 further demonstrates the accuracy of defendant's contention as to its bonus policy. Plaintiff testified that she was given a yearly statement showing the net sales of her department. For the fiscal year 1947 the bonus paid her was $9,500. According to her claim of an agreement to pay her a bonus of $2\frac{1}{2}\%$ on net sales over $150,000, she should have received $12,132.63. On the same basis for the fiscal years since 1947, including 1955, the amount of bonus she received each year was considerably less than the amount she would be entitled to receive under the contractual arrangement asserted by her.

Vincent Considine, in charge of the fiscal affairs of the defendant, testified that profitable operation of the corporation was a prerequisite to the payment of and the principal determinant of the size of the bonuses. His testimony is reinforced by the undisputed evidence of the corporate practice and is corroborated by plaintiff's attribution to him of a like spontaneous statement prior to any contemplation of a lawsuit. Plaintiff failed to establish a relationship or identity between her mode of compensation prior to the alleged express agreement relied upon and that provided by the alleged agreement. Her position at all times has been that this was a continuation of an old type of employment contract only different as to its rate. If plaintiff's testimony is taken at face value it would appear that her employer failed in regard to a bonus to live up to its contractual commitments to her for a decade, and yet she did not upon the presentation

of a bonus check to her on February 14, 1956, even look at it. It is significant to note that when on July 15, 1957, Vincent Considine and Thomas Considine, Jr. advised her of the termination of her status as a buyer, she failed to assert any right to continued employment or to past amounts due her. In Peaslee v. Glass, 61 Ill 94, in reversing judgment on a verdict for the plaintiff, the court said (95): "We must set aside one resting only upon the evidence of the plaintiff when it is contradicted not only by the defendant but also by another witness, and there are no elements of probability to turn the scale." See also Selamakos v. Victory Ice & Ice Cream Co., 246 Ill App 178; Warszawa v. White Eagle Brewing Co., 299 Ill App 509, 20 NE2d 343; Huchette v. Williamson County Coal Co., 188 Ill App 321.

Plaintiff points out that on cross-examination of Thomas Considine, Jr. it was elicited notwithstanding defendant's contention that it had never paid bonuses based on net sales to buyers, that there was an agreement made between Rudolph Schlam in 1947 whereby defendant agreed to pay Schlam, the buyer for the fur department, a salary plus a bonus based on 2½% of net sales in excess of $400,000. When the hiring of Schlam was brought to Considine's attention by reference to a letter the witness's recollection was refreshed and he then explained the matter. It is significant that plaintiff, an employee for thirty years, failed to produce a witness in refutation of defendant's position that a buyer for the firm had received a bonus on the basis of the net sales of a department.

The judgment rests solely upon the testimony of plaintiff. There are serious contradictions and inconsistencies in her testimony. Her testimony in regard to pertinent aspects of the alleged conversation of February 14, 1956, has been impeached. There are no corroborative facts or circumstances supporting her al-

34

legations as to the creation or existence of the alleged contract. I am convinced that the judgment is contrary to the manifest weight of the evidence. In Donelson v. East St. Louis Ry. Co., 235 Ill 625, 85 NE 914, the court said (628):

"The constitution, which provides that the right of trial by jury as previously enjoyed shall remain inviolate, does not make the jury the final judges of the weight of evidence, and if a verdict is manifestly against the weight of the evidence it is the duty of the trial judge to set it aside and grant a new trial, and a failure to do so is error, for which a judgment must be reversed. (Chicago, Burlington and Quincy Railroad Co. v. Gregory, 58 Ill 272; Henry v. Eddy, 34 id. 508; Lincoln v. Stowell, 62 id. 84.) In Belden v. Innis, 84 Ill 78, the court said that in all cases where a verdict is manifestly and palpably against the weight of the evidence the judge in the trial court should promptly take the responsibility of setting aside the verdict, and a failure to do so is error. If a verdict is manifestly against the weight of the evidence, it is not necessary that it should further appear that it was not the result of the impartial and honest judgment of the jury, nor that it resulted from prejudice, passion or some improper motive or condition. To permit a verdict which is clearly and manifestly against the weight of the evidence to stand, upon the supposition that the jury were impartial and honest, would be as unjust and injurious to the defeated party as though it proceeded from passion, prejudice or some improper motive."

The part of given instruction No. 2 tendered by the plaintiff that if "defendant has not proved by the greater weight of the evidence that the parties agreed to any changes in the agreement of employment" tends to confuse the jury on the subject of the burden of proof. Plaintiff's given instruction No. 4 also has a

35

tendency to confuse and should have been refused. The court erred in receiving in evidence plaintiff's exhibit No. 1, the memorandum made on the envelope by plaintiff on February 14, 1956, at the time of her alleged conversation with Thomas Considine, Jr. Plaintiff in her testimony indicated that she had a complete memory of the occurrence supposedly recorded. A memorandum is not admissible as independent evidence, though proven by the person who made it, but only for the purpose of refreshing the recollection of the witness. Western Union Cold Storage Co. v. Warner, 78 Ill App 577, 583; Lindroth v. Walgreen Co., 338 Ill App 364, 87 NE2d 307; D'Oranzo v. Lacny, 330 Ill App 333, 71 NE2d 104; (Abst.) "Where a witness has a distinct recollection of the circumstances surrounding the transaction as to which he testifies, written memoranda of the facts made by him at the time of the occurrence should not be admitted * * *." 32 CJS Evidence, Sec 696, p 588. The memorandum was inadmissible under either of the two doctrines known as "present recollection refreshed" or "past recollection recorded." Koch v. Pearson, 219 Ill App 468, 472.

The judgment should be reversed and the cause remanded with directions to proceed in a manner consistent with these views.