Mid-Continent Construction Company, Inc., a Corporation, Plaintiff-Appellant, v. Bertrand Goldberg, Doing Business as Bertrand Goldberg Associates, Goethe Building Corporation, a Corporation, Continental Illinois National Bank and Trust Company, Not Individually but as Trustee Under Trust No. 46835, Defendants-Appellees.

Gen. No. 48,764.

First District, First Division.

February 25, 1963.

Lewis W. Schlifkin, of Chicago, for appellant.

Thompson, Raymond, Mayer & Jenner, of Chicago, for Goethe Building Corporation and Bertrand Goldberg Associates, appellees, and Mayer, Friedlich, Spiess, Tierney, Brown & Platt, of Chicago (Samuel W. Block and Kenneth J. Burns, Jr., of counsel), for Continental Illinois National Bank and Trust Company, appellee.

MR. PRESIDING JUSTICE BURMAN delivered the opinion of the court.

This appeal concerns Count II of the amended complaint in which plaintiff, Mid-Continent Construction

Company, sought to foreclose a mechanic's lien. (Count I of the complaint, which seeks an accounting, is not involved in this appeal.) Defendants filed a motion to dismiss, raising as a defense a waiver of the mechanic's lien executed by Ursa C. Stringer, president and sole stockholder of plaintiff corporation. After reference to a master in chancery for findings of fact, Count II of the complaint was dismissed without leave to amend the order stating that "[t]here is no just reason for delaying enforcement of or appeal from this order . . ." Plaintiff appeals.

This matter arises out of a written contract, dated October 31, 1960, whereby plaintiff was employed by defendant Goethe Building Corporation to erect the concrete portions of a multi-story building at 1300 Astor Street. Defendant Bertrand Goldberg, doing business as Bertrand Goldberg Associates, was the architect for the project and defendant Continental Illinois National Bank and Trust Company, as trustee of a land trust, held title to the premises. Stringer conducted the negotiations prior to entering into the contract and signed the contract, as president for Mid-Continent.

Concurrent with negotiating the construction contract, which was contingent upon plaintiff's ability to secure financing and a performance bond, Stringer negotiated with Harold J. Green to secure financial aid in order to perform the construction contract. The financial status of plaintiff was such that the bonding company required the guaranty of a person of substantial means before it would execute the performance bond. In return for his promise to sign the performance bond and to provide a revolving fund of $50,000, Green was to be assigned all sums due under the construction contract and Stringer was to assign his 100% interest in the stock of Mid-Continent as security.

On October 28, 1960, Green sent letters to Goethe and Goldberg informing them that he had agreed to make the financial advancements to Mid-Continent and that, in return, all sums due under the contract had been assigned to him. These letters did not mention the stock assignment. Goldberg answered the letter by enclosing photostatic copies of the letter, requesting Green to acknowledge that it was his letter. In addition, Goldberg stated that arrangements were being made with the bank for credit and as soon as the papers were completed, Green would be forwarded a set for his records.

On February 13, 1961, Stringer went to Goldberg's office where he executed a waiver of mechanic's lien on behalf of plaintiff. The waiver recited that it was executed, "in consideration of the sum of One Dollar ($1) and other good and valuable consideration." It further recited that the owner of the building would not permit construction to be initiated without the waiver. The waiver was notarized but was not recorded until August 10, 1961. Neither Goldberg nor Stringer notified Green about the waiver nor did Stringer have prior authorization from the plaintiff's board of directors. (The directors at that time were, in addition to Stringer himself, his wife and Robert Calhoun.) On February 15, 1961, two days after the waiver was executed, Stringer presided over a meeting of the board of directors at which time the directors approved the financial arrangements made with Green and the construction contract itself. The waiver was not mentioned. The written agreement with Green was signed March 7, 1961.

Construction was started on the building, but some months later, work was suspended. On October 20, 1961, Mid-Continent served notice of mechanic's lien and instituted this proceeding.

254

After defendants filed the motion to dismiss, raising as a defense the waiver signed by Stringer, plaintiff answered contending that:

(1) The release was not executed by an officer of the corporation;

(2) If it were executed by an officer, he had no authority to so do on behalf of plaintiff;

(3) The release was executed without consideration; and,

(4) Defendants were on notice as to the lack of authority of Stringer to execute the waiver.

An order was then entered stating that it appeared to the court, after argument, that the motion to dismiss was well taken and should be granted, but that plaintiff requested an opportunity to submit evidence on the following limited issues:

(1) Whether or not as stated by the attorney for the plaintiff in the course of the above argument, the waiver and release of the lien rights set forth in defendants' motion to dismiss was in fact executed by Ursa C. Stringer in behalf of the plaintiff at some time subsequent to February 13, 1961, the date of execution appearing thereon, at a time when said Ursa C. Stringer did not have the authority, express or otherwise, to execute said waiver and release in behalf of the plaintiff?

(2) Whether or not said Stringer had authority, express or otherwise, to execute said waiver and release whenever it was executed by him?

(3) Whether or not said Stringer's authority to execute said waiver and release, at the time

he did in fact execute it, was any different from the authority he had to execute the contract on which plaintiff brings this action, which is exhibit A to the complaint, as amended?

At the hearing before the Master in Chancery, plaintiff called as witnesses Bertrand Goldberg, Shirley Miller and Ursa C. Stringer. Several exhibits were also produced. The Master found that Stringer did execute the waiver and release on behalf of plaintiff on February 13, 1961, the date of execution appearing thereon; that Stringer had authority, express or otherwise, to execute the waiver; and that that authority was no different from the authority to execute the construction contract entered into in October, 1960. Plaintiff's objections to the report were limited to the last two findings. The Chancellor overruled the objections and dismissed Count II without leave to amend. This appeal followed.

In support of its contention that the corporation is not bound by Stringer's execution of the waiver and release of lien rights, plaintiff places principal reliance upon Section 5 of the corporate by-laws and the following cases: Smith v. Shoreline Printers & Publishers, Inc., 6 Ill App2d 290, 127 NE2d 677; Sacks v. Helene Curtis Industries, Inc., 340 Ill App 76, 91 NE2d 127; Bloom v. Nathan Vehon Co., 341 Ill 200, 173 NE 270; and Yeskel v. Murray Holding Co., 54 A2d 224 (NJ, 1947).

Section 5 of the corporate by-laws provides:

President. The president shall be the principal executive officer of the corporation and shall in general supervise and control all the business and affairs of the corporation. He shall preside at all meetings of the shareholders and of the board of directors. He may sign, with the Secretary and any other proper officer of the

256

corporation thereunto authorized by the board of directors, certificates for shares of the corporation, any deeds, mortgages, bonds, contracts or other instruments which the board of directors has authorized to be executed, except in cases where the signing and the execution thereof shall be expressly delegated by the board of directors or by these by-laws to some other officer or agent of the corporation, or shall be required by law to be otherwise signed or executed; and in general shall perform all duties incident to the office of president and such other duties as may be prescribed by the board of directors from time to time.

Plaintiff does not contend that the construction contract itself is invalid, although it too was entered into by Stringer alone, as president, without prior authorization from the board of directors as required under the by-law. Plaintiff argues that the construction contract was entered into in the ordinary course of plaintiff's business and that prior approval was, therefore, not necessary. It is asserted, however, that the waiver and release was of such an extraordinary nature that prior approval was needed. An examination of the record reveals that plaintiff did not introduce any evidence tending to show that the waiver of lien was an extraordinary transaction, the only testimony in this regard being Stringer's statement that it was a general practice.

Bloom v. Nathan Vehon Co., 341 Ill 200, 173 NE 270, involved a suit by the former secretary and director of defendant company to recover salary due under an oral contract of employment made with the president, who held 650 of the 670 outstanding shares of stock. Although it refused to enforce the salary contract, the Supreme Court affirmed the rule that the president, by virtue of his office, has the power

257

to execute, in the ordinary course of business, contracts pertaining to corporate affairs. Plaintiff relies on the following language of that opinion:

> It is contended by plaintiff that by reason of the fact that [the president] was the owner of a large majority of the stock he was authorized to make a contract with the plaintiff fixing his salary. Under our statute a corporation can act only through its board of directors and officers. Its property is not subject to the control of its members or its stockholders. (Citation omitted.) It is true that [the president] owned a large majority of the shares of stock, but that fact could not vest him with any additional power. 341 Ill at 206.

In Joy v. Ditto, Inc., 356 Ill 348, 355, 190 NE 671, it was pointed out that the Bloom rule related only to salaries paid to officers and directors "as such." The rule does not apply to third parties who, without knowledge of the by-law, transact business with the corporation through the corporate president who has apparent authority.

In Smith v. Shoreline Printers & Publishers, Inc., 6 Ill App2d 290, 127 NE2d 677, the president of the corporation had subordinated the company's note to that of another firm, without any express authority to do so. The corporation was held not to be bound by this act. However, a review of the facts there indicate it is not authority for the present situation. There, the president, who owned only two of 2,551 shares, actually had little authority, the general manager being his son, the vice-president. In fact, the president, during the period involved, actually devoted most of his time to another project, leaving the son in complete control of the corporation. Here, Stringer owned 100% of the stock, and completely

managed the business; in fact, he treated the firm as a sole proprietorship.

The Shoreline decision relied on Sacks v. Helene Curtis Industries, Inc., 340 Ill App 76, 91 NE2d 127, which involved a suit by a former employee of defendant to recover a percentage of profits alleged to be due under an oral contract of employment made with the firm's president who was owner of one-third of the corporation. The other two-thirds were owned by two other officers. The employment contract was found to be an extraordinary contract outside the authority of the president, who was found not to be the general manager of the firm. The corporation was held not bound by the alleged contract. Here there was no evidence presented tending to show that the waiver was extraordinary and, under the by-laws and facts, Stringer was the general manager with apparent full authority.

In Yeskel v. Murray Holding Co., 54 A2d 224 (NJ 1947), the corporate president had taken a contract for the sale of property, drawn up by the board of directors, and made material alterations prior to delivering it to the prospective purchaser. The court refused to hold the corporation bound by the altered contract. Here, Stringer did not act contrary to the desires to the board of directors but rather, continued his prior actions of handling the transaction on his own.

Finally, plaintiff relies on the rule cited in 19 CJS, Corporations, sec 1044, that:

> As a general rule, the power to modify or rescind a corporate contract is in the board of directors, and not in the stockholders; and no other officer or agent can make such modification, even though he has power to make the contract, unless authority in this respect has been specially conferred on him, as by the board of directors. Thus

> the president has no implied power to modify a contract entered into by, or under the authority of, the directors; . . .

However, this rule must be considered along with another rule, cited in sec 1004, that:

> [T]he trend of authority is to uphold as binding on the corporation acts or contracts on its behalf by a person or persons owning all or practically all the stock, even though there is a lack of, or defect in, some corporate step or action. . . . [T]he fact that certain officers own all or practically all of the stock may have an important bearing in determining the validity and binding effect of their acts. Thus, where certain officers are the sole corporate owners of the corporation, they are not limited in the control of corporate affairs by a board of directors which must necessarily consist of dummies, and the corporation is bound by the acts of officers who are in reality its owners and are permitted by the directors to manage the business; . . .

Cited under this section is Korman v. Wanen Catalpa Apartments, Inc., 20 Ill App2d 598, 156 NE2d 621. There, the president of the corporation, who owned 244 of the 250 shares of corporate stock (the other six shares being owned by the president's wife and daughter), entered into a contract with two real estate agents to sell a piece of property, the sole corporate asset. The contract was negotiated, and entered into, by the president alone; the other officers and directors were not consulted. In determining whether the corporation was bound by this act, the court stated:

> It is fundamental that the president of a corporation is vested with authority to carry on the ordinary business of the corporation. (Citing Bloom v. Vehon Co., 341 Ill 200, 204.) It is equally

fundamental that, if the president of the corporation carries on negotiations with apparent authority to bind the corporation, and the corporation does not object to the president's actions in that regard, then the corporation is bound by the authority exercised by its president. (pp 14–15 of the decision.)

The Korman decision is consistent with the writings in this area. In Professor Fuller's article, The Incorporated Individual: A Study of the One-Man Company, 51 Harv L Rev 1373, 1388, he states:

It has been urged that a shareholder-manager may not contract in the corporate name in the absence of authority from the board of directors. But if the one-man company is viewed realistically, it affords no proper place for the application of general agency principles to the activities of the shareholder-manager. Where a sole shareholder purports to act in behalf of the company, there is no other person concerned; he acts in his own interest and for himself alone. The justification existing in the ordinary corporate situation for treating the corporation as a separate person, i. e., a principal, is entirely lacking.

Similar language is found in 5 Fletcher, Private Corporations, sec 2099 (1952 Ed).

Plaintiff also has cited the Illinois cases of Bleck v. Cosgrove, 32 Ill App2d 267, 177 NE2d 647; Central Republic Trust Co. v. Evans, 378 Ill 58, 37 NE2d 745; and Hadley v. Union Trust and Sav. Bank, 226 Ill App 170. In Bleck the president of the corporate owner of a country club, without approval from the directors, made an oral promise to secure for defendant lessee a new lease for more than one year although all prior leases had been for one year only. There was no showing that the president was the dominant owner

261

of the corporation and the court further found that, "[t]he record clearly characterizes the proposed agreement as unusual and extraordinary . . . ." 32 Ill App 2d at 278. In Central Republic Trust Co. the act of the president was held to be ultra vires, not binding on the bank even if the directors had given authorization. Hadley involved the vice-president's modification of a contract handled by the president.

None of the above cases control a situation where, as here, the president, who is the sole owner of the corporation, has been allowed, by a subservient board of directors, to independently transact the business of the corporation. The master here found that Stringer did have authority, express or otherwise, to execute the waiver and that this authority was no different from his authority to execute the construction contract. The record does not disclose that these findings are against the manifest weight of the evidence and hence, will not be disturbed. Stowell v. Satorius, 413 Ill 482, 109 NE2d 734; Finley v. Felter, 403 Ill 372, 86 NE2d 188.

Plaintiff next contends that the defendants were on notice of the assignment of the contract from Mid-Continent to Green and thus should have inquired into the authority of Stringer to execute the waiver and release. The construction contract, signed by both Mid-Continent (by Stringer) and defendants on October 31, 1960, provides that, "[t]his contract shall not be assigned by without first obtaining permission in writing from the architect of Goethe . . ." The negotiations between Mid-Continent and Green did not culminate into a written agreement until March 7, 1961, some time after the waiver was executed. Goldberg testified he was not aware that Green had an assignment of the contract inasmuch as the contract specifically provided that Mid-Continent could not assign the contract without defendants' consent. Plaintiff

relies on the correspondence between Green and Goldberg in October of 1960 to prove the contrary, although Green himself did not testify before the master. The letters relied on by plaintiff only speak of the assignment, a question not before us on this appeal. Nothing was said in Green's letter about lien rights. Under these circumstances, we cannot find that defendants were on notice to inquire as to Stringer's authority to execute the waiver. If, as it appears, Stringer did not inform either Green or the Board of Directors about his signing the waiver of lien, that is a matter between them.

■ Finally, plaintiff argues that the Master erred in sustaining objections to testimony offered by plaintiff in support of their contention that no consideration was paid for the waiver and release. No objections or exceptions to this ruling by the Master were filed and thus, by not asking the Chancellor to review this matter, we consider the point to have been waived. In any event, the Master's ruling was not erroneous. The three questions referred to the Master were at plaintiff's specific request and this issue was not included. Moreover, it appears from the record that the waiver and release of lien was part of the negotiations leading to the signing of the construction contract and the owner would not authorize commencement of construction unless the waiver was executed. Plaintiff cannot now be heard to claim it received nothing for this waiver.

Upon this record we are forced to conclude that the waiver executed by Stringer is binding on the corporation. Therefore the judgment below is affirmed.

Affirmed.

MURPHY and ENGLISH, JJ., concur.